**In re John E. WOLF, Jr., Debtor.**

**Bankruptcy No. 86–00738–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 17, 1987.

John W. Guinee, Jr., Reston, Va., Trustee.

Richard J. Stahl, Annandale, Va., for debtor.

Blair D. Mitchell, Asst. Co. Atty., Robert B. Easterling, Stafford, Va., for Agnes Hazel and James Earl Perry.

George E. Marzloff, Stafford, Va., for Triple-Jay Properties.

Harry R. Mathis, Stafford, Va., pro se.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

The dispute at bar arises upon objection to the motion of the debtor, John E. Wolf, Jr., for entry of an order authorizing execution of documents and a disbursement of funds. Wolf owned a parcel of land in Stafford County, Virginia, against which numerous trusts and liens had been recorded. Before Wolf filed his petition in bankruptcy, the Commonwealth of Virginia condemned and took by right of eminent domain that portion of the parcel bordering Garrisonville Road in order to broaden the road from two to four lanes. Wolf and the Commonwealth of Virginia agreed upon Sixty-Four Thousand Dollars ($64,000.00) as fair consideration for the condemned property and the proper disbursement of this sum among the various trust and lien holders is the matter pending for resolution by this Court.

The debtor proposes, as he must, to pay in full the priority real estate taxes due the Commonwealth. In addition, the debtor proposes to pay the first trustholders, James Earl Perry, Agnes Hazel Perry and Leona Shackelford [now deceased] the sum of One Thousand Six Hundred and One Dollars and Twenty-Four Cents ($1,601.24), rather than the balance due on their note, pursuant to the following provision of the recorded Deed of Trust:

> Noteholder [the Perrys and Leona Shackelford] agrees to subordinate this trust to a bona fide construction loan and to release any portion of the above land at the rate of $10,000 per one-third (⅓) acre.

The first Deed of Trust was recorded against this parcel as part of the sale of the parcel by the Perrys and Ms. Shackelford to Triple-Jay Properties. The sellers took a promissory note for Seventy Thousand Dollars ($70,000.00) in payment for the parcel, and the parties executed the Deed of Trust exerpted above. When Triple-Jay Properties resold the parcel to the debtor, the debtor assumed Triple-Jay Properties' obligation under the Perry/Shackelford Deed of Trust and placed second and third deeds of trust on the property in favor of Triple-Jay Properties. The third trust, which secured the realtor's commission on the sale, is presently held by Aquia Realty. Thus, Triple-Jay Properties is both a party to the Deed of Trust in dispute, and stands in third position in the line of distribution as holder of second trust. The debtor proposes to pay Triple-Jay's second trust in full, but his ability to do so depends on this Court's acceptance of his reading of the Perry/Shackelford Deed of Trust.

■ Wolfe construes the cited language in the first Deed of Trust to permit, upon request, a release of the lien encumbering any portion of the condemned land in return for payment at the stated rate of compensation. Accordingly, release of the 2,325 square feet of condemned land at the rate of $10,000.00 per one-third acre yields $1,601.24 for the holders of the first trust.

The first trustholders dispute Wolfe's interpretation of the release clause at issue. The phrasing of the subordination and release agreements in the conjunctive, argue the Perrys, defeats Wolfe's disbursement proposal, for a release of land can only accompany a subordination of the first trust to a construction loan. Wolfe's reading of the disputed language, the Perrys contend, substitutes the disjunctive "or" for the conjunctive "and". Indeed, counsel for the debtor repeatedly stated at oral argument that the options for subordination and release were "mutually exclusive":

> [T]he noteholder ... agreed alternatively if there was a request to subordinate the trust to a bona fide construction loan to do so *or* to release any portion of the above land at the rate of $10,000 per one-third acre (emphasis added).

Thus, the Court is faced with directly conflicting interpretations of a single sentence in the first Deed of Trust. The Perrys sought to introduce extrinsic evidence in the form of their Contract of Sale with Triple-Jay Properties in support of their reading of the release clause; Wolfe objected to the Court's consideration of that evidence.

Wolfe argued that the document is unambiguous on its face, and consequently the Court may not consider evidence introduced to vary or contradict the clear import of the writing. In the alternative, the debtor argued that the merger doctrine prevented consideration of the contract of sale, because the provisions of the contract regarding release of land encumbered by the Deed of Trust were merged into the Deed of Trust itself. The Court need not reach either of these issues, however, for we find the Deed of Trust clear and unambiguous on its face.

The debtor argued that the sentence at issue unambiguously memorializes two promises: a promise to subordinate the first trust to a construction loan, and a separate promise to release any portion of the parcel at the rate of $10,000.00 per one-third acre. Several factors militate against a finding in favor of the debtor. First, under Wolf's interpretation, exercise of the release option could immediately discount the Perry's $70,000.00 Deed of Trust to a $30,000.00 security instrument, because the entire one-acre parcel could be released for the latter sum. Thus, in the context of the entire Deed of Trust document, Wolf's reading of the subordination and release provision is at best illogical. Further, use of the disjunctive "or" or use of two separate sentences, rather than the conjunctive "and," would more efficiently and succinctly memorialize the agreement as advocated by the debtor. Thus, although the Court is bound to uphold even a disadvantageous agreement, the debtor's interpretation of this document requires that the Court adopt a strained reading of the language used by the parties. Consequently, we are not persuaded by the debtor's argument.

The single sentence at issue refers to a situation in which a construction loan is to be placed on the property. The trustholders agreed to subordinate their lien to the construction loan, thus yielding first position on the property, *and* to release land at the rate of $10,000.00 per one-third acre. Wolf's primary argument against this interpretation of the writing is that it is nonsensical to contemplate a subordination of the trust upon land which has been released from the trust. This argument, however, misconstrues the subordination and release clause. The recorded agreement is not to release and subordinate, but to subordinate and release. Counsel's protestations aside, the latter transaction is entirely possible. More to the point, it is only logical to assume that references to land on which a lien is to be subordinated were not intended to include land on which the lien is to be released.

The clear import of the disputed language renders the clause inapplicable to the issue of disbursement presently at bar. Because no construction loan has been placed on the property, the circumstance for which the agreement was designed has not occurred. The subordination agreement can have no force or effect.

■ Even if the meaning of the clause in dispute were less plain, the Court would come to a similar conclusion after consideration of the supplementary evidence offered by the Perrys. Wolf's initial objection to consideration of the Contract of Sale executed by the Perrys, Ms. Shackelford and Triple-Jay Properties is that the document is offered in violation of the parol evidence rule. Citing two cases recently decided by the Supreme Court of Virginia, *Amos v. Coffey*, 228 Va. 88, 320 S.E.2d 335 (1984) and *Wilson v. Holyfield*, 227 Va. 184, 313 S.E.2d 396 (1984), Wolf argued strenuously that the Court must find an ambiguity in the instrument in order to consider parol evidence, and that no ambiguity exists in the language at issue. Consideration of these cases is unnecessary, for Wolf has ignored the rule most recently enunciated in the Virginia Supreme Court case of *McComb v. McComb*, 226 Va. 271, 307 S.E.2d 877 (1983):

> [T]he parol evidence rule operates only between the parties to a writing and has no application in a suit involving strangers to the writing nor in a suit involving one party to the writing and a stranger thereto.

226 Va. at 274–75, 307 S.E.2d 877 (citations omitted).

Because the dispute at bar is between the debtor, who all agree was not a party to the first trust agreement, and the Perrys, who are signatories to the first Deed of Trust, the rule of the *McComb* case excludes this matter from the purview of the parol evidence rule. Granted, the other party to the security instrument, Triple-Jay Properties, argued in favor of the debtor's interpretation of the Deed of Trust and proposal for disbursement. Triple-Jay, however, appeared in its capacity as second trust holder, standing to gain full payment of its debt if this Court were to accept the debtor's reading of the first trust document. Thus, although counsel for the debtor repeatedly characterized the dispute at bar as one between the original parties to the Deed of Trust transaction, the true adversaries before this Court are Wolf and the Perrys. Accordingly, the parol evidence rule poses no bar to consideration of the contract of sale.

■ In addition, the evidence offered is not traditional "parol", or oral evidence, but is the written contract for sale of this parcel of land entered into by the Perrys, Ms. Shackelford and Triple-Jay Properties. Wolf argues that the Court may not consider such documentary evidence because the pertinent provisions of the contract have been merged into the Deed of Trust, rendering the Deed of Trust the final and complete statement of the parties on the matter. Wolf cites as authority the Virginia Supreme Court case of *Miller v. Reynolds*, 216 Va. 852, 223 S.E.2d 883 (1976), in which the court quoted the formulation of the merger doctrine found in Michie's Jurisprudence:

> In the absence of fraud or mistake in the instrument itself, the rule is universal, applicable to deeds as well as to all other contracts, that prior stipulations and understandings are merged in the final and formal contracts executed by the parties, and when a deed has been delivered and accepted as performance of an antecedent contract to convey, the contract is merged in the deed.

216 Va. at 855, 223 S.E.2d 883, *quoting* 12 M.J., *Merger* § 2, p. 698.

The doctrine of discharge by merger is applied almost exclusively to a situation in which a contract for the sale of land is followed by delivery and acceptance of a deed conveying the property. *See* 6 *Corbin on Contracts* § 1319 ("Merger by Acceptance of a Deed of Conveyance or by Execution of a Formal Written Contract"). In this circumstance, courts often consider the provisions of the contract of sale to be merged into the accepted deed, thus extinguishing any right of action on the contract. However, some agreements con-

tained in the contract of sale survive delivery and acceptance of a nonconforming deed. The *Miller* court, for example, permitted an action based upon a contingency contained in the contract of sale which did not appear on the accepted deed, finding "that the parties did not *intend* the condition of the contract to be merged into the subsequent deed of conveyance." 216 Va. at 857, 223 S.E.2d 883 (emphasis added). The *Miller* court's inquiry into the intent of the parties is in accord with earlier Virginia case law adopting the following interpretation of the merger doctrine:

> [A] contract for a deed antedates the execution of the deed, and may, and often does, contain many provisions which the execution of the deed neither adds to nor takes away from. A deed is a mere transfer of title, a delivery so to speak of the subject matter of the contract. It is the act of but one of the parties, made pursuant to a previous contract either parol or in writing. It is not to be supposed that the whole contract between the parties is incorporated in the deed made by the grantor in pursuance of, or as the consummation of, a contract for the sale of land. There are many things pertaining to the contract which it is manifest are never inserted in a deed.

216 Va. at 855, 223 S.E.2d 883, *quoting* 84 A.L.R. 1008 (1933).

The facts at bar differ from the archetypical merger case. Here it is asserted that a particular provision in the contract of sale was merged into the instrument establishing a lien against the land sold. Thus, the debtor argues that the full contractual agreement regarding the terms of the sellers' lien was merged into the recorded Deed of Trust. Consequently, this Court's inquiry is limited to the language of the Deed of Trust.

The primary function of a Deed of Trust is to formally encumber the property, here, as is usually the case, pursuant to a financing arrangement. In the same way that the delivery of a deed might effectuate the core purpose of a contract of sale yet not embody every term of the agreement between the parties, execution of a Deed of Trust need not enumerate each and every facet of the parties' financing agreement. On similar facts, the *Miller* court determined that courts need examine the intent of the parties to merge particular features of the prior document into the later document. 216 Va. at 857, 223 S.E.2d 883. This Court heard no evidence of the appropriate intent in the matter at bar, and consequently can make no finding sufficient to satisfy the test established by the *Miller* court. The debtor has cited no case requiring a conclusive presumption that the mere execution of a Deed of Trust indicates the signatories' intention to merge all previous agreements on the topic into the new document. In the absence of evidence illuminating the intent of the parties, the Court may not find that the subordination provision of the contract was extinguished by merger.

▇ Furthermore, the merger doctrine is not a rule of evidence, but a doctrine regarding discharge of a contract. *See* 6 *Corbin on Contracts* § 1319 ("[w]hen in pursuance of a contract for the sale of land, a deed of conveyance is delivered and accepted, it has often been said that rights and duties created by the contract are "merged" in the deed and discharged"). One must conclude that, although subsequent events have extinguished the rights of the parties to a contract, the contract itself still stands as documentary evidence of the agreement of the parties. When, as here, it is claimed that a provision in a subsequent document is ambiguous (rather than flatly omitting or contradicting an earlier provision), the only logical approach is for the Court to consider the earlier writing as evidence of the parties' purpose in signing the second document. Consideration of the document in this fashion does not run afoul of the merger doctrine because the parties contemplate no action on the original contract.

▇ Since no rule of evidence compels exclusion of the Contract of Sale from consideration, the Court may examine the contract and discover whether or not it sheds any light on the provisions of the Deed of Trust. The Sales Contract states:

SUBORDINATION: Seller to subordinate to a construction loan so purchaser may construct a building requiring ⅓ of acre more or less to be released to erect such bldg.

A simultaneously executed Amendment of Contract of Purchase augments the subordination clause:

This addendum hereby provides that purchaser agrees to pay seller for the release of any portion or parcel of land equal to a cost of $10,000 per one-third acre.

The clear import of this language is to verify the Perrys' version of the subordination agreement and interpretation of the Deed of Trust. The contract makes clear that the release of land was contemplated in conjunction with a construction loan and erection of a building on the property. Read in tandem with the provision it supplements, the amendment merely sets a rate of compensation for land released pursuant to the subordination provision.

Triple-Jay Properties argued to the contrary that the amendment sets forth a completely independent promise from that contained in the subordination clause: "[w]e are really talking about separate obligations; that is, the noteholder agreed to one of two things: either to subordinate the entire acre to a bona fide construction loan or, in the alternative and at the option of the purchaser, the purchaser could obtain a release of a third of an acre upon the payment of $10,000 in cash. And I think those were either/or as evidenced by the way the provisions were structured in the original sales contract."

Triple-Jay Properties' interpretation distorts the plain meaning of the subordination clause and its addendum. Both the subordination and the release are set forth in the contract itself; the addendum supplements the contract with a compensation agreement. The structure of the provisions, therefore, compels a conclusion opposite to that advocated by counsel.

Read as a coherent whole, the complete agreement provides:

Seller to subordinate to a construction loan so purchaser may construct a building requiring ⅓ of acre more or less to be released to erect such bldg. [P]urchaser agrees to pay seller for the release of any portion or parcel of land equal to a cost of $10,000 per one-third acre (⅓).

When the original clause and its addendum are combined in this fashion, the conclusion is inescapable that a release of land for payment was contemplated *only* in conjunction with construction on the land. Consequently, the debtor's proposal to pay the Perrys $1,601.24 rather than the balance due on their note must be rejected, for a release of land condemned by the Commonwealth is outside the scope of the subordination provisions.

■ A second objection to the debtor's proposed scheme of disbursement was interposed by a creditor, Harry Mathis. Mathis noted that only 5.34 percent of the encumbered land was condemned by the Commonwealth and argued that the various trustholders be paid a maximum of 5.34 percent of the proceeds of the condemnation. Mathis proposed that the remaining funds be held by the trustee for distribution to unsecured creditors. The trustholders have benefitted from the condemnation of land, Mathis contends, because the property has appreciated in value in excess of two hundred percent. Thus, even with a slightly smaller parcel securing Wolf's debt, the trustholders hold more than adequate security. In this situation, Mathis asserts, equity demands that the condemnation proceeds be held for unsecured creditors rather than paid to fully-secured parties.

The single fact which derails Mathis' argument is that by operation of statute the Commonwealth of Virginia has acquired clear title to the condemned land; the liens recorded against the parcel have attached to the $64,000.00 proceeds of the condemnation. An initial step in the process of a taking by eminent domain is the filing of a certificate by the State Highway and Transportation Commissioner that sets forth a sum of money earmarked as compensation for the land in question, which will be paid by the Commonwealth upon

order of court. *See Va.Code* §§ 33.1–121—33.1–122 (1984). Upon recordation of the certificate among the land records,

> the interest or estate of the owner of such property shall terminate and the title to such property or interest or estate of the owner shall be vested in the Commonwealth and such owner shall have such interest or estate in the funds held on deposit by virtue of the certificate as he had in the property taken or damaged, and all liens by deed of trust, judgment or otherwise upon such property or estate or interest shall be transferred to such funds.

*Va.Code* § 33.1–122 (1984).

The arrangement suggested by Mathis thus requires that Wolf reach some accord with lienholders under which they would consent to a release of their liens against the proceeds. No such consent has been solicited or is likely to be offered. Under the law of the Commonwealth, Wolf has no alternative but to apply the condemnation proceeds to the debts owed secured creditors in the order of their priority.

An appropriate Order will enter.