## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Sassan Haghighi et al.

v.

Renate M. Sager et al.

By JUDGE WILLIAM H. LEDBETTER, JR.

April 5, 1988

The question for determination is whether the defendant's amended cross-bill is demurrable.

This is a suit for specific performance of purchase option provisions of a lease dated April 27, 1985. A copy of the thirteen-page lease, bearing the notarized signatures of the parties, was filed with the bill and, therefore, is a part of that pleading. Rule 1:4(i).

Paragraph 19 of the lease contains language by which the Haghighis, lessees, are granted an option to purchase the property according to terms set forth therein. The Haghighis allege that they attempted to exercise their purchase option in November of 1987 and that Sager refused to convey the property in violation of the lease agreement.

Sager filed a timely response, consisting of an answer and a cross-bill. The Haghighis demurred to the cross-bill.

After an ore tenus hearing on February 1, 1988, the court sustained the demurrer and granted Sager leave to file an amended cross-bill.

Sager filed an amended cross-bill. The Haghighis again demurred. A hearing on the second demurrer was held

on April 4, 1988, and the court took the matter under advisement. This opinion addresses that second demurrer.

A demurrer lies when an affirmative pleading does not state a cause of action or does not state facts upon which the relief demanded can be granted. Virginia Code Section 8.01-273. In considering a demurrer, all facts stated in the questioned pleading are assumed to be true.

Sager acknowledges that she leased the property to the Haghighis. Further, she acknowledges that the lease contains a purchase option. (The acknowledgment appears. It is not specifically repeated in the amended cross-bill. Nevertheless, such an acknowledgment must be inferred from the allegations in the amended cross-bill in order for that pleading to make any sense; in fact, the existence of the purchase provisions in the lease create the basis for her claim.)

In essence, Sager contends that the pertinent lease provisions, whereby the Haghighis were granted the right to purchase her real estate and the furniture, furnishings, fixtures, and equipment used in connection with the child care center located on the property, were supposed to be operable only if and when the Haghighis decided to purchase her other "business assets." Therefore, she argues, the Haghighis "have been unjustly enriched by the failure of [the parties] to enter into a contract for the sale of the defendant's business assets." She seeks relief in the amount of $100,000.00 representing the value of those other business assets.

Preliminarily, two points should be noted.

First, Sager's claim is based on the assumption that the relief sought in the Haghighis' bill will be granted. If the court were not to compel specific performance of the purchase option provisions in the lease, her theory of recovery would fall of its own weight: i.e., in such event, the Haghighis would not be unjustly enriched but would be mere tenants of Sager, holding the property under the rental provisions of the lease.

Second, Sager seeks *monetary damages* measured by the value of those other business assets. Ordinarily, unjust enrichment is viewed as an equitable doctrine which imposes, under certain circumstances, a legal duty of *restitution.*

Nonetheless, putting those difficulties aside, the court will analyze all of Sager's contentions to ascertain whether the amended cross-bill, as a whole, states a cause of action.

As noted above, Sager concedes that the parties did not contract for the sale and purchase of her other business assets. The amended cross-bill does not allege that the written lease of April 27, 1985, should be construed to contain such an agreement, nor does it allege that the instrument contains language from which the court could conclude that the option to purchase in paragraph 19 of the lease is contingent upon the purchase of her other business assets. Further, the amended cross-bill does not contain an allegation that the parties entered into a collateral or separate agreement, written or oral, relating to the sale of those other business assets. In fact, in paragraph 27 of the amended cross-bill, she acknowledges that the parties failed to make any contract for the sale and purchase of those other business assets.

Instead, she asks the court to imply a contract.

From what facts or circumstances is the court to imply such a contract?

If Sager intends to advance the proposition that her failure to contract for the sale of the other business assets, without more, entitles her to the relief sought, the contention is without merit. Clearly, a court cannot imply a contract merely because the parties failed to make one.

Sager asserts that such failure to contract unjustly enriches the Haghighis. Does this additional allegation improve the claim? An assertion of unjust enrichment, without more, is conclusory. Unjust enrichment is an equitable doctrine that a person should not be allowed to profit or enrich himself unfairly at another's expense. The doctrine is applied where one person has and retains something of value which in justice and equity belongs to another. Therefore, a naked allegation that a party is "unjustly enriched" is not enough. Facts must be alleged that, if proven, would permit the court to apply the doctrine. Sager has alleged no facts which, if proven, would establish that the Haghighis have anything of value which in justice and equity belongs to her. Instead, she alleges, in essence, that she has something (the other business

assets) that the Haghighis should purchase but which admittedly they have not agreed to purchase; and she has offered no explanation why they should be compelled to purchase those other business assets except to say that they otherwise will be "unjustly enriched."

In other parts of her amended cross-bill, Sager alleges that she was in the process of getting a divorce and "under severe emotional distress" at the time the lease was negotiated; that Mr. Haghighi is an accountant who had "superior business knowledge"; that she was "under the mistaken belief" that the other business assets would be purchased by the Haghighis simultaneously with the exercise of their option to purchase the leased property; and that she "never intended" to sell the leased property without receiving additional compensation for the other business assets.

If the court is being invited to infer from these allegations a claim of fraud, undue influence, mental incapacity, or mistake of fact, the court declines the invitation. If Sager intends to seek relief based upon one or more of these well-known principles, she must say so. Those allegations, liberally construed, taken individually or together, do not state a basis upon which the doctrine of unjust enrichment can be applied, and do not state facts upon which the relief demanded, monetary damages upon an implied contract, can be granted.

The demurrer to the defendant's amended cross-bill is sustained.

If the defendant cannot state a cause of action consistent with this opinion within twenty-one days from the date of the order, the case will be referred to a commissioner in chancery on the plaintiffs' bill and the defendant's answer (which includes a general denial and certain affirmative defenses).

May 18, 1988

This is a suit for specific performance in which the Haghighis seek the enforcement of purchase option provisions of a lease with Sager dated April 27, 1985. The focus thus far has been Sager's cross-bills, which have been the subject of three hearings, a four-page opinion, and two previous orders. The pertinent facts

are recited in the opinion letter of April 5, 1988, and need not be repeated here.

Sager's original cross-bill sought an award of monetary damages upon a theory of "implied contract." In support of her claim, Sager alleged that the purchase option provisions of the lease did not contain a requirement that the Haghighis purchase her intangible business assets; that the Haghighis would not agree to purchase those intangible assets; and that the Haghighis would be unjustly enriched by the failure of the parties to make such an agreement. The plaintiffs demurred. At a hearing on February 1, 1988, the court held that the cross-bill did not state a claim upon which relief could be granted, Virginia Code Section 8.01-273, and sustained the demurrer by order entered on March 7, 1988.

By leave of court, Sager filed an amended cross-bill. The relief sought was the same; the allegations were expanded to seventeen numbered paragraphs. The plaintiffs again demurred. A hearing was held on April 4, 1988. In a letter opinion dated April 5, 1988, the demurrer was sustained, for the reasons explained in the opinion, and an order was entered on May 16, 1988.

Sager filed a second amended cross-bill. That pleading is divided into four counts. The plaintiffs filed a demurrer to all counts, and the court heard arguments on May 16, 1988. This opinion sets forth the court's rulings on that demurrer.

## Count I

This portion of the second amended cross-bill sets forth entirely new allegations of mistake and seeks rescission of the lease. Sager alleges that "the parties by mutual mistake omitted any reference to the sale of the goodwill and business contacts" in the lease, although both parties had intended to include such terms in the document.

Assuming as true all facts expressly alleged, those impliedly alleged, and those which may be fairly inferred from the facts alleged, *Rosillo v. Winters*, 235 Va. 268 (1988), Sager has adequately set forth a claim of mutual mistake. Rescission may be granted for material mutual mistake affecting the substance of an agreement. *Miller*

 

*v. Reynolds*, 216 Va. 852 (1976). Therefore, Count I states a claim upon which relief may be granted.

### Count II

The next portion of the second amended cross-bill is a smorgasbord of generalities involving mistake, severe emotional distress, unequal bargaining positions, and conduct that "amounts to" fraud. At the hearing on May 16th, counsel for Sager suggested that all of these allegations, taken together, make out a claim of "mistake of law."

The argument is without merit. These scattered references are not facts properly pleaded. The problem with these allegations is similar to the one encountered by the court in connection with the first amended cross-bill, addressed in the opinion of April 5th (pp. 3-4).

There is one significant difference, however, between Count II of this pleading and the earlier versions. In paragraph 24, Sager alleges with clarity and specificity that she was under a "mental disability" at the time the lease was made. This allegation, combined with the other allegations in Count II and all reasonable inferences that can be drawn from them, properly states a claim, i.e., mental incapacity, which, if true, would entitle the defendant to the relief (rescission) sought.

### Count III

In Count III, Sager seeks rescission based upon lack of consideration. She acknowledges that the lease contains no reference to intangibles and, consequently, no consideration for them. Then, she asserts that such omission causes the lease to fail for want of consideration.

The argument is wide of the mark. No one disputes the fact that no mention is made in the lease to intangibles or to any sum to be paid by the Haghighis for the intangibles. The lease, a part of the pleadings (Rule 1:4(i)), clearly makes no reference to intangibles. Simply put, the Haghighis did not pay consideration for the intangibles because they did not contract to buy them. To say that this circumstance causes the lease to fail is a nonsequitur and takes Sager nowhere. The facts alleged in Count III

in support of Sager's claim for rescission on the basis of lack of consideration are inadequate and fail to state a claim upon which relief can be granted.

### Count IV

In Count IV, Sager reworks her earlier claim for monetary damages on a theory of implied contract. In essence, as before, the court is asked to imply a contract for the sale and purchase of the intangibles because the parties did not make one, and the Haghighis will be unjustly enriched unless such relief is granted. The court discussed the difficulty of such assertions in its April 5th opinion (p. 3). Count IV fails because of the same deficiencies. The allegations, taken as true, and applying all fair inferences to those expressed in the pleadings, do not state a claim upon which the relief sought can be granted.

### Conclusion

1. The Haghighis' demurrer to Count I of the second amended cross-bill will be overruled.

2. The Haghighis' demurrer to Count II of the second amended cross-bill will be sustained, except insofar as those allegations set forth a claim of mental incapacity, and the demurrer to that claim will be overruled. (If by this ruling it can be said that the court has reshaped the thrust of the allegations in Count II of the second amended cross-bill, the court holds that such action is proper under the circumstances. Preferring substance over form, the court may mold pleadings to properly ascertain the rights of the parties and to end the litigation. *Johnson v. Buzzard Island Shooting Club, Inc.,* 232 Va. 32 (1986).)

3. The Haghighis' demurrer to Counts III and IV of the second amended cross-bill will be sustained. Because this is the third effort of the defendant to assert such claims, and it is obvious that they cannot be rephrased so as to state a proper claim for relief within the context of this controversy, the court declines to grant leave for further amendment. Accordingly, the claims asserted in Counts III and IV, as well as all claims in Count II except mental incapacity, will be dismissed with prejudice.

The effect of these rulings is to permit Sager's prayer for rescission based on her claims of (1) mutual mistake and (2) mental incapacity to go forward, along with the Haghighis' bill for specific performance of the lease, to hearings before a commissioner in chancery.

May 2, 1989

This case is before the court on Sager's exceptions to the report of the commissioner in chancery, argued on April 17, 1989, and taken under advisement.

Sager and the Haghighis entered into a lease dated April 27, 1985, by which Sager leased to the Haghighis her child-care facility on Maple Grove Drive in Spotsylvania County for a term of five years for $210,000.00, payable in monthly installments of $3,500.00. Paragraph 19 of the lease contains the following provision:

> 19. Tenants shall have the option to buy the Leased Property at any time during the first three (3) years of this lease at a price of . . . $250,000.00 payable as follows . . . $195,000.00 cash at settlement with the balance to be financed by the Landlord in the form of a negotiable promissory note executed by the Tenants, payable in . . . 120 equal amortized monthly payments of principal and interest at Dominion Bank, Fredericksburg, Virginia, prime rate as last announced prior to the exercise of the option.

A memorandum of this lease was recorded on September 23, 1985.

The Haghighis took possession of the premises, operated a child-care center, and paid the rent. By letter dated December 4, 1987, the Haghighis notified Sager of their intent to exercise the purchase option. Sager refused to convey the property to the Haghighis.

Because of Sager's refusal to convey the property to them, the Haghighis instituted this suit, seeking specific performance of the provisions of paragraph 19 of the lease.

Sager contends that paragraph 19 of the least is a right of first refusal, not an option. further, she relies on the defenses of lack of consideration, mental incapacity, and mutual mistake. She says that the provision was intended to establish a price for the property in the event she decided to sell; and, further, that the Haghighis were supposed to buy her business intangibles (e.g., goodwill) if they decided to buy and she decided to sell the premises.

During the pleading stage of the proceedings, a series of demurrers to Sager's cross-bills were heard and ruled upon. Two letter opinions, one dated April 5, 1988, and the other dated May 18, 1988, set the parameters of Sager's cognizable defenses.

The case was referred to the commissioner on July 19, 1988. A hearing was conducted on August 24, 1988.

During the commissioner's hearing, it was revealed that Sager had transferred the property to a corporation, Whispering Pines, Ltd., in May of 1988. Whispering Pines, Ltd., is a corporation once wholly-owned by Sager but now owned, according to her testimony, by a friend. The court added the corporation as a party defendant on September 1, 1988. The Haghighis filed an amended bill and both defendants responded. On January 3, 1989, the court entered an agreed order, endorsed by all counsel, by the terms of which Whispering Pines, Ltd., is bound to comply with any decree entered in this suit in the same manner as Sager would be bound.

The Commissioner filed his report on April 10, 1989.

### Weight of Commissioner's Report

Although a commissioner's report is not entitled to the weight given a jury verdict, Virginia Code Section 8.01-610, it is entitled to respect and should not be arbitrarily disturbed. The report is deemed prima facie correct as to questions of fact, especially where, as here, the evidence has been taken in the commissioner's presence. *Eppes v. Eppes*, 181 Va. 970 (1943); *Hill v. Hill*, 227 Va. 569 (1984).

Nonetheless, the court has conducted an independent review of the exhibits and the transcript of testimony

of the witnesses and has researched the legal principles relied on by the commissioner.

### Is Paragraph 19 An Option?

An option is a continuing offer to sell, held open for acceptance at a fixed price for the time specified, supported by valuable consideration. An option is a right to purchase. 14A M.J., *Options*, § 2.

Sager says that the language of paragraph 19 creates only a right of first refusal, or at least that is what she intended it to create. The distinction between an option and a right of first refusal is explained in *Century 21 Simmons & Co., Inc. v. Landa*, 237 Va. ---, 5 V.L.R. 1925 (1989). Here, paragraph 19 clearly and unambiguously entitled the Haghighis to purchase the leased premises for a stated price within a specified time. If supported by consideration, this irrevocable offer constitutes an option.

### Consideration

An option must be supported by valuable consideration in order that it cannot be revoked until the time limit for acceptance has expired. If an option is without consideration, it may be withdrawn or revoked at any time before acceptance.

Sager did not withdraw or revoke the option before its acceptance by the Haghighis on December 4, 1987. She does not even contend that she did. Thus, the irrevocability of Sager's offer to sell the premises, which necessitates consideration, is really immaterial.

Nevertheless, for the reasons given by the commissioner in his report, the court finds that the option is supported by consideration. It is not necessary that money be paid at the date of the option. It is sufficient if something flows from the person to whom the option is made and that the promise induces the transaction. *See* 14A M.J., *Options* sect. 4. The commissioner has correctly determined that valuable consideration was paid by the Haghighis in above-market rent. Further, the various mutual promises of the parties in the lease bind Sager to keep the option open until the time limit has expired.

## Mental Incapacity

Besides the other elements of a legal contract, it is essential that there be competent contracting parties. Without a person able to contract and a person able to be contracted with, there can be no mutual assent.

The important question is who are competent parties. The law presumes that all adult persons have capacity to contract, and accordingly, where an exemption from liability to fulfill an engagement is asserted by reason of want of such capacity, that fact must be strictly established.

Only in prescribed cases can the protection of lack of capacity be claimed. Weakness of mind short of debilitating mental disease or defect, immaturity of reason, or mere absence of skill or experience upon the subject of the particular contract, do not afford per se a ground for relief at law or in equity. In sum, a contract fairly and voluntarily entered into between parties having the capacity to act cannot be set aside, or its breach excused, however unequal or imprudent its terms may seem to others. *See* 4B M.J., *Contracts*, § 24; *Price v. Barham*, 147 Va. 478 (1927).

No particular degree of mental acumen is prescribed as the measure of one's capacity to contract. The test is whether the party had, at the time, sufficient mental capacity to understand the nature of the transaction and to assent to its provisions. 10A M.J., *Insane and Other Incompetent Persons*, § 37.

Sager does not contend that she is insane, feebleminded, or mentally deficient. It is obvious that she is not. Rather, she contends that at the time she negotiated and executed the lease with the Haghighis, she was distraught and distracted because of her involvement in a protracted marital separation and divorce.

Admittedly, Sager was laboring under personal pressures on April of 1985 which may have made it quite difficult for her to focus on business matters as clearly as she would have preferred. Still, the record is utterly devoid of any evidence that would justify a judicial finding of incapacity. After telephone discussions with Mrs. Haghighi, Sager went to an attorney and laid out the terms

of the lease. That draft contained a right of first refusal. The attorney for the Haghighis redrafted the proposed lease, changing the right of first refusal to an option. Sager reviewed this new proposal with her attorney and signed it. Clearly, she was compos mentis, and the commissioner's findings on this issue will be confirmed.

## Mistake

Ordinarily, parties to a written agreement are bound by its contents which they have had the opportunity to read, and they may not escape the obligations and liabilities which it embraces by claiming ignorance of its contents or a failure to fully understand the ramifications of the obligations contained in it. 4B M.J., *Contracts*, sect. 26.

However, it is elementary that mutuality of assent is an essential element of all contracts. There is no mutual assent where the contract is founded on a mutual mistake of fact about a basic or material aspect of the parties' agreement. The doctrine is not expansive. A mutual mistake involves a mistake of both parties. The doctrine provides that a contract is reformable or voidable if it is shown that the parties mutually erred about a basic fact that is material to their bargain. One party's mistaken belief that the clear and specific language of a written contract does not mean what it says is not a mutual mistake.

In this case, Sager claims that she signed the lease under the impression that the provisions of paragraph 19 had the same. meaning as the first refusal provisions in the earlier draft presented to the Haghighis. Such an unfortunate interpretation of that provision does not permit her to avoid the legal consequences of the option. She read the lease, conferred with her attorney about, and signed it. The commissioner's findings on this issue are correct and will be confirmed.

## Other Considerations

In all other respects, and on all other issues, the recommendations of the commissioner are sound and fully supported by the law and the evidence.

The Haghighis have presented a sketch decree whereby the court confirms the commissioner's report, appoints a special commissioner to convey the property, and adjudicates various other matters. Several of these other matters are not supported by the evidence. For instance, the court is asked to find that Whispering Pines, Ltd., holds fee simple title to the property subject to certain conditions which are recited in the sketch. There is no evidence to support those conclusions and the court declines to do so. Further, such title adjudications are unnecessary and are outside the scope of relief sought in the bill. In another part of the sketch decree, the court is asked to rule that the property be conveyed to the Haghighis on condition that the Haghighis pay the cash amount called for in the option and secure the note for the balance with a second deed of trust on the property. Nothing in the pertinent provisions of paragraph 19 obligates the Haghighis to secure the balance of the purchase price with a deed of trust, and nothing in those pertinent provisions addresses a second lien. If the parties *agree* that the note for the balance of the purchase price is to be secured by a second deed of trust, the court will order it if the decree is clear that the parties have agreed to the insertion of such a provision in the decree.

### *Conclusion*

For the reasons explained, the commissioner's report will be approved and confirmed and the defendants will be ordered to specifically perform the option provisions of the lease. Mr. Massey will please prepare and circulate a sketch decree making reference to this opinion. The decree will provide that unless the defendants deliver a good and sufficient deed to the Haghighis, consistent with this opinion, within twenty-one days of the date of the decree, a special commissioner shall be appointed who will, at Sager's expense, convey the property to the Haghighis upon the terms and conditions set forth in the option provisions of the lease.

The commissioner's fee is approved. That fee, along with the costs of the court reporter and other allowable court costs, will be taxed to Sager.