## Richmond

A. DAVID MILLER, ET AL. v. CHARLES D. REYNOLDS, ET AL.

April 23, 1976.

Record No. 750511.

Present, All the Justices.

*Wallace B. Smith*, for appellants.

*James A. Gorry, III (Broyles, McKenry and Gorry*, on brief), for appellees.

HARRISON, J., delivered the opinion of the court.

Charles D. Reynolds and Linda F. Reynolds, husband and wife, filed their suit in equity seeking to rescind and cancel the conveyance of a parcel of land to them by A. David Miller and others. The Reynolds alleged that they were induced to purchase the property "by reason of mistake, fraud, either actual or constructive, and misrepresentations" of the appellants.[1] From a final decree granting rescission and cancellation, appellants noted this appeal.

The facts are not in controversy. After a lengthy search for a suitable site on which to construct a home, Mr. and Mrs. Reynolds decided upon a five-acre lot in the Pungo Borough of the City of Virginia Beach, identified as parcel A-1 on a subdivision of the property of Fred Wilkerson. On April 16, 1973, they signed a real estate purchase contract with appellants, whereby they agreed to purchase the property for $12,500, the sale, however, being expressly conditioned and "contingent upon building permit and percolation for septic system".

Thereafter, by deed dated June 13, 1973, A. David Miller and the other owners conveyed the property to appellees with general warranty of title. No mention was made in the deed of the condition that the sale was contingent upon building permit and percolation for septic system. However, at the closing the sellers gave appellees a copy of a soil study, dated November 2, 1971, which had been previously given to appellants by the City of Virginia Beach. This document approved "two parcels of approximately 5 acres each" as sites for septic tanks. The parcels included the lot being sold to the Reynolds and an adjoining lot identified as A-2. Appellants had previously constructed a building on lot No. A-2, for which a building permit had been issued to them by the city.

Following their purchase Mr. and Mrs. Reynolds had plans and specifications prepared for their home, consulted with and engaged a contractor, arranged for the financing of the construction and then, on May 9, 1974, applied to the City of Virginia Beach for a septic tank permit. This action was taken preliminarily to applying for a building permit. Their application for a septic tank permit was denied by the city on May 15, 1974.

M. L. Hall, sanitarian for the Virginia Beach Health Department, testified that in September, 1973, the Health Department had abandoned the percolation test for septic tank approval and had substi-

---

[1] The appellants, defendants below, who were the owners of the property conveyed, are A. David Miller and Nedine K. Miller, husband and wife, Nelson P. Brock and Mabel C. Brock, husband and wife, and Harold Spruill and Mary Spruill, husband and wife, individually and trading as MBS Company.

tuted seasonal water tables as the test. He said that a building permit could not be issued without a septic tank permit. Hall made several test borings on the Reynolds lot, and all indicated that the property had a high seasonal water table near the surface. He said this meant that a septic tank drain field would, on occasion, be under water, and therefore the lot was not deemed suitable for a home site. Hall also testified that in June of 1973, the month in which the deed was executed, he would not have issued a septic tank permit; that at that time the policy of the Health Department was undergoing a change; and that, with the seasonal water tables they were experiencing, a septic tank system on the lot would not have functioned properly.

■ It is clear from the evidence that the property in question was purchased for a residential site and that it was sold with the understanding by all parties that the appellees intended to construct their home on the lot. An express representation was made by the sellers, orally and in writing, that the soil was suitable for percolation; that a septic tank system could be installed; and that a building permit could be obtained to construct a residence thereon. This representation was made to the buyers, and they relied upon it as an inducement to purchase the property. Appellant A. David Miller testified that on the day of closing he stated to Reynolds that the buyers could build on the property "tomorrow, if they wanted". Miller also told Reynolds: "Don't worry about the land. It does percolate." Admittedly, these representations were made by the sellers in good faith, relying upon the 1971 soil study, and the permit which had been issued to them in 1972 for the construction of a house on the adjoining lot.

Appellants contend that the condition set forth in the sales contract, that the sale was contingent upon a building permit and percolation for septic system, merged into the deed and did not survive the closing. The trial court held that the condition in controversy was not merged in the deed and with this we agree.

The theory of merger deals with extinguishing a previous contract with an instrument of higher dignity. G. W. Thompson on Real Property, 1963 Replacement, Vol. 8A, § 4458 states the general rule to be:

"In accordance with contract law generally, all provisions in the contract are merged into the deed when executed and delivered except those covenants which are deemed to be collateral to the sale."

And in 12 M.J., Merger, § 2, p. 698, it is said:

"In the absence of fraud or mistake in the instrument itself, the rule is universal, applicable to deeds as well as to all other contracts, that prior stipulations and understandings are merged in the final and formal contracts executed by the parties, and when a deed has been delivered and accepted as performance of an antecedent contract to convey, the contract is merged in the deed."

The principle which controls the issue of merger was well stated in *Sale* v. *Figg*, 164 Va. 402, 180 S. E. 173 (1935) and *Collins* v. *Lyon*, 181 Va. 230, 245, 24 S. E. 2d 572, 579 (1943), wherein we referred with approval to a note in 84 A. L. R. 1008 (1933), on the subject: " 'Deed as superseding, or merging, provisions of antecedent contract imposing obligations upon the vendor.' " In the note it says:

" 'In this regard it is to be observed that a contract for a deed antedates the execution of the deed, and may, and often does, contain many provisions which the execution of the deed neither adds to nor takes away from. A deed is a mere transfer of title, a delivery so to speak of the subject-matter of the contract. It is the act of but one of the parties, made pursuant to a previous contract either in parol or in writing. It is not to be supposed that the whole contract between the parties is incorporated in the deed made by the grantor in pursuance of, or as the consummation of, a contract for the sale of land. There are many things pertaining to the contract which it is manifest are never inserted in a deed. *** The instrument of conveyance may be complete for its purpose, which is to declare and prove the fact of conveyance; yet very naturally and commonly it is but a part execution of a prior contract, and parol evidence is admissible to show the true consideration for which it is given and all other parts of the transaction, not inconsistent with the recitals in the deed, provided the fact of conveyance is not affected by it.' " 181 Va. at 245, 24 S. E. 2d at 579; 84 A. L. R. at 1009.

*See also Davis* v. *Marr*, 200 Va. 479, 106 S. E. 2d 722 (1959); *Woodson* v. *Smith*, 128 Va. 652, 104 S. E. 794 (1920).

The agreement that the land was suitable for percolation, and that the site would qualify for a building permit, amounted to an inducement or incentive for the buyers to purchase. This agreement did not merge in the deed, and did not qualify, or in any way affect, the title

to the land. It concerned only the suitability of the land for a certain use and was properly the subject of an agreement between the sellers and the buyers. It was not a matter with which a title examiner would necessarily be concerned. Further, the terms of the April 16, 1973 contract of sale and the June 13, 1973 deed are not contradictory. The deed does not undertake to deal with the matter of a building permit or soil percolation. Deeds seldom embody all the contractual provisions that are customarily found in options or contracts of sale. Applying for a building permit, or for permission to install a septic tank system, is an occurrence that usually follows by many months the acquisition of legal title to property.

The evidence establishes that the transaction between appellants and appellees would not have been consummated absent the condition regarding the building permit and the percolation suitability of the lot. The representations made by the sellers, although made in good faith, were in fact erroneous. The appellees therefore purchased under a mistaken belief, brought about by oral and written misrepresentations on the part of the sellers.

The remedy of rescission is equitable in nature and is a remedy granted or denied within the sound discretion of the trial court. Each case is dealt with in the light of its own circumstances. "In cases of plain mistake or misapprehension, though not the effect of fraud or contrivance, equity will rescind the conveyance, if the error goes essentially to the substance of the contract, so that the purchaser does not get what he bargained for, or the vendor sells that which he did not design to sell. . . .' " 16 M. J., Rescission, Cancellation and Reformation, § 11, p. 138.

In the instant case the buyers did not get what they bargained for because they could not construct a dwelling on the property. The sellers did not sell what they intended to, for their intention was to convey a lot on which the buyers could get from the proper authorities a permit to construct a building and have it serviced by a septic system. The mistake was a mutual mistake, and a material one, affecting the substance of the contract. The equities of this case clearly require rescission.

It was argued that appellees were guilty of laches in demanding rescission. It has generally been held that rescission must be sought promptly or within a reasonable time and if such rescission is not sought within a reasonable time the right to rescind is lost. *See* 17 Am. Jur. 2d, Contracts, § 489; 16 M.J., Rescission, Cancellation and Refor-

mation, §§ 7 and 8, pp. 134-35. However, in *Bankers Ins. Co. v. Henderson*, 196 Va. 195, 209, 83 S. E. 2d 424, 432 (1954), Mr. Justice Eggleston, later Chief Justice, said:

> "But aside from this, it is well settled that 'The negligent failure of a party to know or discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof.' Restatement of the Law of Contracts, Vol. 2, § 508, p. 977. See also, *Dickenson County Bank* v. *Royal Exchange Assurance of London*." Citing 157 Va. 94, 111, 160 S. E. 13, 18, 19.

In the instant case there was neither negligence on the part of the buyers nor any undue delay by them in seeking a rescission. Their deed from the sellers is dated June 13, 1973. Application for a building permit and its refusal occurred in May, 1974, and demand for rescission was made immediately thereafter. Mr. and Mrs. Reynolds asserted their right to rescission within eleven months, and we do not regard this as an unreasonable delay. During that time it was necessary for them to select an architect and have plans and specifications prepared; to select a contractor and make arrangements for the construction; and to secure the necessary financing. These are time consuming actions which customarily occur before any application is made for a permit to install a septic system or for a building permit. Promptly upon refusal of their application for a septic tank permit, and upon gaining knowledge that a residence could not be constructed on the lot, the appellees moved for rescission.

Further, at the time the sale was completed, Mr. Reynolds had advised appellants that "it would probably be a year before we could build the house because we had to accumulate some money and get things straight—get a builder and negotiate on building a house, and so forth".

We conclude that the parties did not intend the condition of the contract to be merged in the subsequent deed of conveyance. There is no evidence that Mr. and Mrs. Reynolds intended to surrender or abandon the obligation which the appellants had undertaken when they agreed to sell and convey to the appellees a lot on which they could construct a home and install a septic system.

We find no error in the decree of the lower court, and accordingly it is

*Affirmed.*