In the ESTATE OF Joseph Andrew KIELHAFNER, Deceased.

ESTATE OF Joseph Andrew KIELHAFNER, Appellant,

v.

John KIELHAFNER and Ann Kielhafner, his wife, Respondents.

Nos. 43812, 44146.

Missouri Court of Appeals, Eastern District, Division Four.

July 6, 1982.

Motion for Rehearing and/or Transfer Denied Sept. 17, 1982.

Application to Transfer Denied Oct. 18, 1982.

Thomas L. Arnold, Benton, for appellant.

Tom K. O'Loughlin, II, Cape Girardeau, for respondents.

SMITH, Presiding Judge.

Donald Kielhafner as co-executor of the estate of Joseph Andrew Kielhafner appeals from an adverse judgment denying the estate interest on the purchase price of farmland sold by the estate to John and Ann Kielhafner. Donald has also separately appealed the trial court's order refusing to allow attorney's fees for the appeal as a charge against the estate. The appeals have been consolidated. We affirm both judgments.

Donald and John are the co-executors of Joseph's estate and two of the four heirs of Joseph. The other heirs are Joann Kirchdoerfer and Rita Kielhafner, sisters of Donald and John. Pursuant to an agreement among the four children of Joseph and the spouses of the two married children, four parcels of farmland belonging to Joseph prior to his death were auctioned off at a private sale involving only the four heirs. John and Ann were the successful bidders on the two largest parcels. Donald was the next highest bidder on those parcels, and under the agreement was entitled to purchase the parcels at his bid if John and Ann failed to complete the sale. On April 20, 1978, in accord with the agreement, two contracts for the sale of real estate were executed by the heirs and spouses as sellers and John and Ann as buyers. The contracts, except for description of the land and purchase price, are identical. The purchase price was payable 10% upon execution of the contracts and the balance upon closing "which is predicted to bè June 1, 1978." All money was payable to the Estate of Joseph. The contracts contained the following language:

"This transaction shall be closed on June 1, 1978, or as soon thereafter as financing can reasonably be obtained, at which time all monies documents and deeds called for by this contract shall be completed and delivered."

The closing occurred on November 22, 1978, at which time the balance of the purchase price was paid and deeds were delivered to the purchasers. The sale was confirmed by the probate court following a report of sale signed by the co-executors and containing the language ". . . that the said John Kielhafner and Ann Kielhafner, husband and wife, have fully complied with the terms of said sale . . ."

Thereafter, Donald, as co-executor, brought a suit in three counts. The first sought money damages comprised of interest from June 1, 1978, until closing of the contracts, on the basis that John and Ann had breached the contracts by unreasonably delaying the financing and the closing of the contracts. Count II sought damages in the nature of unjust enrichment because of

the use of the land by John and Ann between the time the contracts were executed and closing.[1] The third count sought money damages consisting of interest paid by the estate as a result of an extension of time to file and pay federal estate taxes originally due June 2, 1978. This extension was alleged to have been necessary because of the delay in closing the farmland purchases.[2]

As to Count I, defendants raised the affirmative defense that the sale contracts had merged into the deeds preventing recovery for breach of the contracts and denied that any unreasonable delay had occurred. The trial court rejected the merger defense but found no unreasonable delay. Following a post-trial hearing, the trial court allowed the docket fee for appeal and transcript cost as a charge against the estate but denied Donald's motion to charge attorney's fees on appeal against the estate.

In this court, Donald raises three contentions. Initially, he challenges the court's order denying a jury trial on Count I. Secondly, he challenges the court's finding that no unreasonable delay occurred. Thirdly, he challenges the court's denial of his motion to charge attorney's fees on appeal against the estate. We will deal first with whether plaintiff made a submissible case on Count I.

▆ The doctrine of merger, as recognized in Missouri, is stated in *Artman v. O'Brien*, 398 S.W.2d 24 (Mo.App.1965) [3] as follows:

"No rule of law is better settled than that where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is functus officio, and the rights of the parties rest thereafter solely on the deed." (Quoting from 2 Devlin on Deeds (3d Ed.) p. 1570, § 850e).

*See also, S. G. Payne & Company v. Nowak*, 465 S.W.2d 17 (Mo.App.1971) [1]; *Frisbie v. Scott*, 199 Mo.App. 131, 201 S.W. 561 (1918) [3]; *Wilson v. Wilson*, 115 Mo.App. 641, 92 S.W. 145 (1906). There are exceptions to this rule such as fraud, accident, mistake, or an express contractual provision holding open a condition. None of those apply here. The trial court rejected the merger defense on the basis that the financing provisions were collateral and a part of the consideration which did not merge into the deed. It is true that collateral agreements do not merge. *Tighe v. Locke*, 299 S.W. 105 (Mo.App.1926) [1, 2]. But we find nothing collateral about the financing provisions. The sales contracts were straightforward purchases of land for money. The financing provisions were simply a recognition and acceptance of the fact that the purchasers would need to borrow money to obtain the purchase price of the land. Those provisions gave them time to do so. The contracts did not compel the purchasers to obtain financing, it merely gave them the opportunity to do so. Had the purchasers achieved a windfall during the pendency of the sale contract, nothing in those contracts would have forced them to borrow the money to complete the transaction. If the purchasers were in breach of any provision of the contracts, it was in delaying the closing for whatever reason. The contracts provided for an exchange of money for deeds. The time when that would occur was in no sense collateral, it was the completion of the transaction.

▆ Plaintiff places considerable reliance upon his repeated protestations throughout the pendency of the sales contracts that the defendants were unreasonably delaying closing and upon his request at the time of closing that defendants pay interest for the period of delay. Plaintiff did not attempt

1. The trial court found that such use was expressly provided for by the contracts and held in favor of John and Ann. No question is raised on appeal on this portion of the judgment.

2. The trial court found that the contracts contemplated closing after June 1 and provided for

contribution by the four heirs to cover the taxes and that the heirs elected to seek the extension rather than contribute. The court held the delay was not the cause of the interest payment. No question is raised on appeal on this portion of the judgment.

to terminate the contracts on this ground nor did he refuse the tendered payment nor insist upon a provision in the deeds holding open the payment of interest for late closing. Rather he executed the deeds and in a report of sale executed by him advised the probate court that defendants "have fully complied with the terms" of the sale. Some commentators have contended that "merger" is really waiver, or accord and satisfaction, or substituted contract. A. L. Corbin, Contracts, § 1319 (1960); S. Williston, Contracts, §§ 679, 680 (3d Ed. 1967). By whatever name is invoked, the facts here establish that any liability of defendants for late closing was discharged by the execution and delivery of the deeds and the receipt by the estate of the purchase price specified in the contract. Whether purchasers unreasonably delayed the closing or not, plaintiff's Count I did not establish a cause of action as a matter of law.

That finding also disposes of plaintiff's contention concerning a jury trial. In *Jaycox v. Brune*, 434 S.W.2d 539 (Mo.1968) [7–10], the court indicated that if plaintiff's evidence failed as a matter of law to make a case submissible to a jury, then he was not prejudiced by trial to the court. So it is here.

Plaintiff's final point concerns attorney's fees on appeal. Plaintiff focuses on Sec. 473.153.3, RSMo.Supp. 1981, as requiring the allowance of such fees. But that statute mandates allowance for services performed "for the estate." The test is that stated in *In re Flynn's Estate*, 177 S.W.2d 694 (Mo.App.1944) [1]:

> "This does not mean, of course, that such an allowance should go as a matter of absolute right in every case . . ., but only that where the executor or administrator has faithfully discharged the duties of his office and in the main has rendered a true accounting of his trust, he is entitled to have an attorney's fee charged to the estate . . . if, on the whole, it appears that he acted in good faith . . ."

■ The record here is replete with evidence that this litigation and this appeal were pursued because of open hostility between the brothers Donald and John. Donald testified that he was willing to expend as much of the estate's money as necessary to get what he considers "right" done. Neither sister wanted this appeal taken but instead desired that the estate be closed. The estate has been pending for almost five years. The trial judge took judicial notice of the unseemly conflict between the brothers and indicated in the judgment that only because of patience by the court and a reluctance to remove named executors had the brothers been allowed to remain as co-executors. There was a sound basis for the trial court to conclude that the taking of an appeal in this case was not primarily to benefit the estate but was for the personal gratification of Donald in his continuing acrimonious dispute with his brother.

Judgments affirmed.

SATZ and PUDLOWSKI, JJ., concur.