Present:  All the Justices

EMPIRE MANAGEMENT & DEVELOPMENT
COMPANY, INC.

v.  Record No. 970545        OPINION BY JUSTICE ELIZABETH B. LACY
                                     January 9, 1998
GREENVILLE ASSOCIATES

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge


This appeal arises out of a dispute between Empire
Management & Development Company, Inc., (Empire) and Greenville
Associates (Greenville) over a rental income guarantee involved
in the sale of commercial real estate in Albemarle County.

Under a contract dated February 28, 1986, Sunset Corporation
(Sunset),[1] agreed to purchase two parcels of commercial real
estate located in Albemarle County.  The first parcel, designated
"Rio I," was owned by Greenville, while the second parcel,
designated "Rio III," was owned by Caleb N. and Lynn W. Stowe.
The February contract contained a combined sale price for the
parcels of $2,416,000 and also listed several "Special
Conditions," one of which provided for the following rental
income guarantee:
>     (2)  Sellers agrees [sic] to guarantee a monthly
>          income of $2,350.00 on Suite 3, [Rio]
>          Building III and a $1,370.06 [monthly income]
>          on Suite 6, [Rio] Building I, until such time
>          as the monthly income on each of these suites
>          shall equal or exceed these amounts for 3
>          consecutive months.  Each suite may be
>          released from the guarantee separately upon
>          obtaining the required figures.


Sunset and Greenville subsequently entered into a second

1 Sunset subsequently assigned its rights under the
contracts involved in this case to Empire.

contract, dated April 15, 1986, which involved the sale only of Rio I.  The April contract listed a sale price for Rio I of $1,150,000 and also contained a rental income guarantee provision which was identical, with respect to Rio I, to the guarantee provision in the February contract.[2]

Shortly thereafter, on June 3, 1986, Greenville and the Stowes executed deeds conveying Rio I and Rio III, respectively, to Empire.  Neither deed made reference to the rental guarantees.  On the same day, a closing statement prepared by Empire's attorney was signed by attorneys representing the buyers and sellers.  The closing statement referred to the sale of both Rio I and Rio III and, in a section labeled "Notes," contained the following reference to the rental guarantees:

> 5.    Contract provisions in contract dated February 28, 1986 regarding guarantee of leases (more particularly identified as special condition 2 and special condition 6) where Seller guarantees the monthly income on Suite 3, Building III and Suite 6, Building I, shall survive closing and Sellers guarantee of rent on Suite 4 for one year from date of settlement shall survive closing.

Greenville paid Empire a total of approximately $24,000 in monthly rental guarantees for Suite 6 in Rio I.  By letter dated November 29, 1988, however, Greenville notified Empire that the

---

2 The April 15 contract provided:
> Seller agrees to guarantee a monthly income of $1,370.06 on Suite 6 until such time as the monthly income on this suite shall equal or exceed this amount for 3 consecutive months.

amount paid was "in excess of its maximum obligation," demanded repayment of the overpayment, and stated that it had "no further obligation" under the April 15, 1986 contract.

On March 20, 1990, Empire filed a motion for judgment against Greenville alleging breach of the April 15, 1986 contract, seeking the unpaid rental guarantees as damages. Empire nonsuited that action and filed a second motion for judgment against Greenville on December 16, 1994, again alleging that Greenville breached the April 15, 1986 contract. Empire sought to amend its second motion for judgment by adding the February 28 contract as a basis for its breach of contract claim. Greenville objected, arguing that the amendment would add a new cause of action, and that such a new cause of action was barred by the statute of limitations. See Vines v. Branch, 244 Va. 185, 418 S.E.2d 890 (1992). The trial court denied Empire's motion to amend the motion for judgment.

Following a bench trial, the trial court issued a letter opinion in which it determined that the April 15, 1986 contract "was extinguished" and could not "now be asserted as the grounds for a cause of action." Although conceding that "[t]he deed in the instant case does not deal with the subject of the rental guarantee," applying the merger doctrine as articulated in Woodson v. Smith, 128 Va. 652, 104 S.E. 794 (1920), and Charles v. McClanahan, 130 Va. 682, 108 S.E. 858 (1921), the trial court concluded that mention of the February contract in the closing

3

statement was sufficient to extinguish the April contract. The opinion letter also rejected Empire's claim that Greenville was estopped from denying the validity of the April 15 contract.

The trial court entered a final judgment order denying Empire's breach of contract claim and a special plea of recoupment filed by Greenville. We awarded Empire an appeal limited to its claim that the trial court erred in ruling that the merger doctrine operated to extinguish the April contract at closing.[3]

The merger doctrine deals with extinguishing a previous contract by an instrument of higher dignity. Miller v. Reynolds, 216 Va. 852, 854, 223 S.E.2d 883, 885 (1976). The doctrine generally provides that, in the case of the sale of real property, the deed of conveyance represents the final agreement of the parties and all prior agreements, oral or written, are merged into the deed of conveyance. Id. at 855, 223 S.E.2d at 885; Charles, 130 Va. at 686, 108 S.E. at 859. In this case, the trial court's decision that the doctrine of merger operated to extinguish the April 15 contract was not based on an analysis of the deed of conveyance, but was based on the statement referencing the rent guarantees in the closing statement. This was error.

---

[3] At the petition stage of their appeal, we denied Empire's assignments of error regarding the trial court's rejection of Empire's claim of estoppel and denial of its motion to amend and Greenville's assignments of cross-error.

4

Closing statements are not deeds, nor are they part of a deed. Closing statements generally recapitulate the particulars of the "closing" on a real estate transaction. 2 Milton R. Friedman, Contracts and Conveyances of Real Property § 11.14 (5th ed. 1991). A closing statement is defined as a "[w]ritten analysis of closing (i.e. final steps) of [a] real estate transaction setting forth purchase price less deductions for such items as mortgage payoff, tax adjustments, etc. and adding credits to arrive at net amount due seller." Black's Law Dictionary 255 (6th ed. 1990).

In this case, the provisions contained in the closing statement itemized the agreements set out in the February and April contracts of sale. For example, the contracts of sale provided that all taxes, insurance, rents, and interest were to be prorated at settlement; the closing statement set forth the specific dollar amounts relative to prorations of those items. The contracts for sale indicated that title was to be conveyed free of liens and indebtedness; the closing statement recited that the sellers would secure the release of a deed of trust on Rio I and that the purchasers were assuming first and second liens of indebtedness on Rio III.[4] The contracts for sale provided for rent guarantees for space in both Rio I and Rio III; the closing statement referenced the provisions of the February

_____

4 Assumption of these liens was also contained in the Rio III deed of conveyance.

5

contract relevant to the rent guarantees, which, as to Rio I space, were identical to those in the April contract.

In summary, the closing statement in this case did no more than recapitulate previously established agreements between the buyers and sellers and itemize the dollar value of those agreements where relevant. It did not state that those previously executed agreements upon which the recapitulations were based were extinguished or superseded. As to the rent guarantees for Rio I, the closing statement did no more than identify the terms and conditions of the guarantees; it did not change those conditions, create new terms, or in any way alter the pre-existing agreements between the parties.

There is nothing in this closing statement that qualifies it as an instrument of higher dignity than the contracts for sale upon which it is based. The doctrine of merger simply is not applicable to the facts of this case.[5] Therefore, the trial court erred in holding that the April 15 contract could not be asserted as the grounds for a cause of action because it was extinguished by the closing statement pursuant to the merger doctrine.

_____

5 In its brief on appeal, Greenville apparently also relies on the doctrine of integration of contracts to support the trial court's decision. Greenville asserts that "where the parties enter into a written agreement then all prior agreements which are on the same subject are merged into the subsequent contract and are extinguished." We reject this argument. Neither party has claimed that the closing statement was an independent contract, and the attributes of the closing statement set out above would not support such a contention.

Even though the closing statement did not extinguish the April 15 contract, the question remains whether the rent guarantees of the April 15 contract were merged into the June 3, 1986 deed conveying Rio I to Empire. Clearly, the deed is an instrument of higher dignity than the April 15 contract. However, the merger doctrine is not absolute. Agreements which are collateral to the passage of title and are not covered in the deed can survive the execution of the deed. Davis v. Tazewell Place Associates, 254 Va. 257, 262-63, 492 S.E.2d 162, 165 (1997); Miller v. Reynolds, 215 Va. at 855, 223 S.E.2d at 885; Woodson v. Smith, 128 Va. at 656, 104 S.E. at 795.

The rent guarantees are not addressed in the deed, and are collateral to the passage of title. There is no evidence to suggest that the parties intended the rent guarantees to terminate with the execution of the deed. Although the closing statement had no effect on the validity of the prior contracts for sale, it nevertheless reflected the parties' intent that the rent guarantees for both Rio I and Rio III established in the prior contracts "survive closing." Indeed, the rent guarantees are executory until the property is conveyed. Thus, we conclude that the rent guarantees contained in the April 15 contract were not merged into the June 3, 1986 deed conveying Rio I to Empire. Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings.

Reversed and remanded.

7