In re Diane L. TRIBBY, Debtor.

Robert H. Meurer, et al., Appellants,

v.

Diane L. Tribby, Appellee.

No. 98–12359–SSM.
Civ.A. No. 99–1328–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 24, 1999.

Martin Carroll Conway, The Pesner Law Group, P.L.C., McLean, VA, for appellant.

Spencer Dean Ault, Johnson, Young & Ault, P.C., Leesburg, VA, for appellee.

## MEMORANDUM OPINION

ELLIS, District Judge.

This bankruptcy appeal presents an unsettled question of Virginia law, namely, whether the doctrine of merger by deed extinguishes a purchaser's right to sue on a contractual clause requiring settlement by a certain date, when the purchaser accepts tardy delivery of the deed without specifically reserving the right to seek damages for delay.

## I

This bankruptcy appeal is an outgrowth of appellee Diane Tribby's divorce from her husband, Troy Tribby. As a consequence of the couple's divorce proceedings, certain real property jointly owned [1] by the divorcing couple was to be sold as part of the property settlement. But when appellants in this case, Robert and Patricia Meurer, offered to buy the land, appellee balked, refusing to sign the contract for sale. This prompted her ex-husband, in March 1998, to obtain a Loudon County Circuit Court decree ordering appellee to sign the contract and to consummate the sale. Appellee initially complied with the decree and signed the contract. Yet, later that same month, she filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Virginia, which served to stay the Loudon County court proceeding, including the decree requirement to tender the deed. In the final analysis, appellee's tactic failed; the bankruptcy filing only delayed the inevitable, as the Bankruptcy Court eventually granted Troy Tribby relief from the automatic stay, so that he could seek enforcement of the Loudon County court decree.

Meanwhile, in July 1998, appellants filed a proof of claim against appellee's estate, seeking both specific performance of the contract for the sale of the real estate, as well as damages arising from delay in consummating the transaction. Appellee, while appealing the Bankruptcy Court's grant of relief, filed a plan that declared the contract an avoidable executory contract. The district court denied appellee's appeal of the grant of relief, and also denied a further stay pending appeal to the Fourth Circuit Court of Appeals. The parties then proceeded to closing, which occurred on December 2, 1998, when appellee and her husband tendered a deed conveying the property to appellants.

Appellants, having received the deed to the property, now seek damages arising from appellee's eight month delay in deliv-

---

1. Appellee lived and operated her business on this property.

ering the deed, as the contract of sale required that settlement occur on or before March 28, 1998. Significantly, the contract also (i) preserved the parties' rights to all legal and equitable remedies in the event that full settlement according to the terms of the contract did not occur, and (ii) stated that the terms of the executory contract would not be merged into the deed (the "survival" clause).[2] Moreover, the contract required appellee to cooperate with appellants' effort to purchase the property in execution of a tax-free exchange with two parcels of investment property they had sold earlier.[3] In that regard, the tax code provided appellants only a limited time period in which to purchase the replacement property to take advantage of the tax-free exchange, and by July 1998 that time period had expired. Thus, appellants were forced to recognize the gain on the sale of the two parcels, and incurred taxes of $7,292 in the 1997 and 1998 tax years.

On these facts, the Bankruptcy Judge found that appellee breached the term of the contract requiring settlement by March 28, 1998, and that if such a breach established liability to appellants, appellee would be liable for the tax bill, as well as additional expenses of $850. The Bankruptcy Judge ruled, however, that the doctrine of merger by deed extinguished appellee's liability under the contract's time of performance clause. In a thoughtful opinion delivered from the bench, the Bankruptcy Judge concluded that the date fixed for the sale of property "went to the very heart of the transaction," was not collateral to the passage of title, and was therefore extinguished by appellants' acceptance of the deed. In his view, because the deed was silent as to the earlier deadline, appellants could not seek damages for delay. On a motion to reconsider, the Bankruptcy Judge rejected appellants' argument based on the contract's survival clause, and reaffirmed that the time of performance clause was fundamentally inconsistent with delivery of the deed at a later date.

■ On appeal, appellants claim the Bankruptcy Judge misconstrued and misapplied Virginia's doctrine of merger, and improperly ignored the contract's survival clause. The question presented is thus whether Virginia's doctrine of merger dictates that a deed conveying property extinguishes a right to seek damages for delay pursuant to a term in the sale contract. Because the Bankruptcy Court's holding involves the application of the law, appellate review is de novo. *In re Stanley*, 66 F.3d 664, 667 (4th Cir.1995).

## II

■ The doctrine of merger in the sale of real property is a rule of contract construction by which certain aspects of the initial executory contract are subsequently extinguished by the deed, an "instrument of higher dignity."[4] The doctrine recognizes that parties to an executory contract for the sale of land may, in the course of further negotiations before delivery of the deed, alter certain elements of the transaction, and that those alterations may be reflected in the deed.[5] The deed, therefore, me-

2. The survival clause stated as follows: "The provisions [of this contract] shall survive delivery of the deed and shall not be merged therein." Regional Sales Contract ¶ 33.

3. *See* 26 U.S.C. § 1031 (authorizing so-called "like kind," tax free exchanges).

4. *Empire Management & Development Co., Inc. v. Greenville Associates*, 255 Va. 49, 52, 496 S.E.2d 440, 442 (1998); *Miller v. Reynolds*, 216 Va. 852, 854, 223 S.E.2d 883, 885 (1976). This is based on the "elementary principle" governing all agreements that "a later agreement, in more solemn form, is considered an execution of the preceding negotiations leading up to its execution." Charles S. Parnell, *Deed as Superseding or Merging Provisions of Antecedent Contract Imposing Obligations upon the Vendor*, 38 A.L.R. 1310, § 3 (1954).

5. *See* 5C Michie's Jurisprudence of Virginia and West Virginia, *Deeds* § 107 (1998) [hereinafter Michie's Jurisprudence, *Deeds* ] ("Until consummated by deed, an executory contract

morializes the final agreement of the parties, "and all prior agreements, oral or written, are merged into the deed of conveyance," *Empire Management*, 255 Va. at 52, 496 S.E.2d at 442.[6] Yet, the doctrine "is not absolute." *Id.* at 54, 496 S.E.2d at 443.[7] Certainly, the deed is final "as to every subject which it undertakes to deal with." *Woodson v. Smith*, 128 Va. 652, 656, 104 S.E. 794, 795 (1920). Typically, however, a deed represents only that aspect of the contract dealing with the transfer of title, and while a deed may cover other aspects of the transaction, it rarely purports to cover all elements of the original contract for sale.[8] Thus, while the deed is proof of the "fact of conveyance," other documents, including the executory contract, may be considered to determine obligations collateral to the fact of conveyance.[9] Accordingly, the doctrine of merger only applies to (i) subject matter specifically covered by the deed,[10] and (ii) subject matter that is not "collateral to the passage of title." *Empire Management*, 255 Va. at 54, 496 S.E.2d at 443.[11]

of sale is subject to modification by agreement of the parties; and where an act is done which ... is tendered by one of them, and accepted as full performance by the other ..., [in the absence of fraud or mistake] the acceptor and those claiming under him are not competent to assert that some part of the original agreement remains to be performed.").

6. *See also Miller v. Reynolds*, 216 Va. at 855, 223 S.E.2d at 885; 5C Michie's Jurisprudence, *Deeds*, supra, § 107 (1998) ("The general rule is that all articles of agreement for the sale of land are merged in and extinguished by a *subsequent deed thereof between* the parties.").

7. *See also Davis v. Tazewell Place Associates*, 254 Va. 257, 262, 492 S.E.2d 162, 165 (1997); *Miller v. Reynolds*, 216 Va. at 855, 223 S.E.2d at 885.

8. *See Miller v. Reynolds*, 216 Va. at 855, 223 S.E.2d at 885 (noting that the "deed is a mere transfer of title" and that the contract "may, and often does, contain many provisions which the execution of the deed neither adds to nor takes away from") (quoting *Collins v. Lyon*, 181 Va. 230, 245, 24 S.E.2d 572, 579 (1943); citing *Sale v. Figg*, 164 Va. 402, 180 S.E. 173 (1935)) (internal quotation marks omitted); 5C Michie's Jurisprudence, *Deeds*, supra, at § 107 ("[T]he deed effects a merger only to the extent that it is contemplated that the deed should be a performance of the contract."); *see also* Parnell, *supra* note 4, ("[T]he deed is actually intended in most cases as an execution only of the contract to convey.").

9. *See Miller v. Reynolds*, 216 Va. at 855, 223 S.E.2d at 885 ("[P]arol evidence is admissible to show ... all other parts of the transaction, not inconsistent with the recitals in the deed, provided the *fact of conveyance* is not affected by it.") (internal quotation marks and citations omitted) (emphasis added).

> Corbin stated this general rule as follows:
> The deed of conveyance is delivered as a part performance of the contract; it is almost never assented to as a complete "integration" of the contract. The conveyance may or may not be accepted by the purchaser as full satisfaction of some or all of the vendor's promissory duties; it is almost never assented to by the purchaser as a complete written statement of what those duties are, and even less often is it assented to by the vendor as a complete statement of the duties assumed by the purchaser. Parol evidence is practically always admissible to show that the consideration for the conveyance is not accurately stated in the deed, if the purpose for which it is offered is the enforcement of promises made by either party and not to affect to the validity of the deed as a conveyance.
> 6 Arthur Linton Corbin, Corbin on Contracts § 1319 (1962).

10. *See Miller v. Kemp*, 157 Va. 178, 201, 160 S.E. 203, 209 (1931) ("The very fact that the final instrument of conveyance, the deed, differs from the original contract and was accepted by both [parties] is evidence of a change in their original agreement."); *Woodson*, 128 Va. at 656, 104 S.E. at 795 ("All inconsistencies between the prior contract and the deed must be determined by the latter alone....").

11. *See Davis v. Tazewell Place Associates*, 254 Va. 257, 262, 492 S.E.2d 162, 165 (1997); *Miller*, 216 Va. at 855, 223 S.E.2d 883 ("There are many things pertaining to the contract which it is manifest are never inserted in a deed") (quoting *Collins v. Lyon*, 181 Va. 230, 24 S.E.2d 572 (1943); other citations omitted); *Woodson*, 128 Va. at 656, 104 S.E.

■ Analysis of the instant appeal thus requires two inquiries, namely, whether the time of performance clause at issue here is in conflict with the terms of the deed, and whether such a clause is collateral to the passage of title. As to the first question, an examination of the deed and the contract for sale reveals no inconsistency between them as to the time of performance clause. The deed merely reflects the day that settlement occurred, whereas the contract indicates the bargained-for settlement date. Put differently, the deed and the contract time of performance clause do not conflict merely because they show different dates; the time of performance provision is a *contractual obligation*, which, if breached, may establish liability, whereas the deed date reflects only *the fact* that the deed was delivered on a certain date. So, the time of performance clause simply establishes the liability of the tardy party for damages stemming from any delay in settlement, and the fact that the deed was delivered months later than the date fixed by the parties in the clause is simply evidence of a breach of that clause. There is, in sum, no conflict between a contractual provision requiring deed delivery by one date and a deed showing actual delivery on a later date.[12]

■ The answer to the second question is found in Virginia decisional law on the merger doctrine. In concluding whether a clause is merged into the deed, the Supreme Court of Virginia identified the following factors as relevant: (i) whether the term was "collateral to the sale of the property," (ii) whether it "qualif[ied], or in any way affect[ed], title to the land," (iii) whether it was one "with which a title examiner would necessarily be concerned," [13] and (iv) whether the term was "properly the subject of an agreement between the sellers and the buyers" rather than the subject of a deed.[14] And, additionally, as with all contracts, the intent of the parties must be a significant element of the analysis.[15] These factors, applied to the instant time of performance clause, point persuasively to the conclusion that the clause is collateral to the deed and not extinguished by the late delivery of the deed. First, a clause fixing the time of performance does not affect the fact of conveyance itself; it exists only to provide a damages remedy if conveyance is tardy.[16] Second, whether or not a vendor owes a vendee damages for delay would have no effect on the quality or nature of title

at 795 ("Doubtless many cases may arise in which distinct and unperformed stipulation contained in a contract for sale will not be merged in or discharged by deed where that instrument is silent upon the subject of such stipulations."); *see also* 6 Corbin on Contracts § 1319 (1962) ("[C]ollateral promises not inconsistent with the terms of the deed are not discharged by the acceptance of the deed.").

12. The parties, of course, may have intended the delivery of the deed to erase the contractual obligation created by the time of performance clause, but that is evidence of waiver or of accord and satisfaction, not a conflict between the terms. *See* 6 Corbin, supra, § 1319 (noting that the conveyance of the deed "may or may not be accepted by the purchaser as full satisfaction of some or all of the vendor's promissory duties").

13. *Davis*, 254 Va. at 263, 492 S.E.2d at 165; *see also Miller v. Reynolds*, 216 Va. at 855–56, 223 S.E.2d at 885.

14. *Miller v. Reynolds*, 216 Va. at 856, 223 S.E.2d 883.

15. *See Empire Management*, 255 Va. at 54, 496 S.E.2d at 443 (considering whether the parties intended the rent guarantees to be extinguished with the deed); *see also Continental Life Ins. Co. v. Smith*, 41 N.M. 82, 64 P.2d 377 (1936) (noting that "if the stipulation has reference to title, possession, quantity, or emblements of the land, it is generally, but not always, held to inhere in the very subject-matter with which the deed deals, and is merged therein").

16. *Cf. Davis*, 254 Va. at 263, 492 S.E.2d at 165 (holding that a warranty to construct a townhouse in a good and workmanlike manner was collateral to the sale of property).

conveyed. Along those same lines, a title examiner, seeking to verify the transfer of title in the chain of title, does not need to know whether the vendor's deed delivery was tardy, or whether the vendee sought damages after tender for the vendor's tardiness. Third, a time of performance clause is properly the subject of an agreement between a vendor and vendee, and is not properly the subject of a deed. Appellants sought a timely conveyance of property so that they could take advantage of certain tax provisions, and appellee knew that a failure to perform in a timely way would have certain adverse financial consequences for appellants. Time of performance was central to the executory obligations under the contract, but irrelevant once the fact of conveyance occurred. All that then remained of appellee's obligation to perform in a timely way was liability for damages stemming from appellee's tardy performance. Fourth, and perhaps most significant, the survival clause is compelling evidence that the parties intended the contract's time of performance clause to survive the delivery of the deed.

Although the Supreme Court of Virginia has not squarely considered whether time of performance clauses are collateral to the passage of title, it has ruled that a variety of analogous provisions are collateral in this respect, including rental income guarantees made by the seller,[17] an express warranty regarding construction of a townhouse,[18] and a provision making the sale conditional on the land's amenability to a septic system.[19] A contract time of performance clause, like these provisions, is collateral to, and not inconsistent with, the deed, leading to the conclusion that a time of performance clause is collateral to the passage of title.

Courts in other states have similarly concluded that a term fixing the time for settlement is not merged into the deed once the deed is accepted.[20] The New Mexico Supreme Court held that "a stipulation to deliver a deed at a certain time

**17.** *See Empire Management*, 255 Va. at 54, 496 S.E.2d at 443.

**18.** *See Davis*, 254 Va. at 263, 492 S.E.2d at 165.

**19.** *See Miller v. Reynolds*, 216 Va. at 853–54, 223 S.E.2d at 884–85.

**20.** *See Continental Life Ins. Co. v. Smith*, 41 N.M. 82, 64 P.2d 377 (1936) ("[A] stipulation to deliver a deed at a certain time . . . could not merge in a deed, but it may be intentionally waived or surrendered."); *Christensen v. Slawter*, 173 Cal.App.2d 325, 343 P.2d 341 (1959) ("[U]nder [the circumstances of the case] the acceptance of a tardy conveyance should not be held to constitute a waiver of the purchaser's right to sue for the damages resulting from the delay."); *Houston & T.C.R. Co. v. Wright*, 15 Tex.Civ.App. 151, 38 S.W. 836 (1897) (holding that acceptance of the deed did not foreclose an action for damages from delay).

Indeed, the Nebraska Supreme Court, in deciding a separate question of merger law, assumed without discussion that a clause fixing the time of performance does not merge with the deed. *See Purbaugh v. Jurgensmeier*, 684, 240 Neb. 679, 483 N.W.2d 757, 762 (1992) ("[T]erms such as . . . date of closing . . . are normally not repeated in the deed and therefore are not merged with the deed instrument.").

Only one court, on unpersuasive reasoning, has reached a contrary result. *See In re Kielhafner*, 639 S.W.2d 115 (Mo.Ct.App.1982) ("[T]he facts here establish that any liability of defendants for late closing was discharged by the execution and delivery of the deeds and the receipt by the estate of the purchase price specified in the contract."). *Kielhafner* represents a particularly harsh application of the merger doctrine, especially since the plaintiff there made "repeated protestations . . . that the defendants were unreasonably delaying closing," and even requested, at the time of closing, "that defendants pay interest for the period of delay." *Id.* at 117. The court was unimpressed with these efforts, because the plaintiff did not attempt to terminate the contract based on delay, or to "insist upon a provision in the deeds holding open the payment of interest for late closing." *Id.* at 118. But such a rule renders a time of performance clause practically nugatory; unless the vendee sues before tardy delivery is effected, the vendor can violate the clause with impunity merely by tendering the deed, forcing the vendee either to reject the deed and litigate, or to accept the deed and forfeit the claim for violation of the clause.

... was never intended to survive the deed except as a basis of an action for damages," and thus "[s]uch stipulation could not merge in a deed." *Continental Life*, 64 P.2d at 381–82. To the same effect, a California District Court of Appeals determined that, because the purchaser could have received specific performance *and* damages had seller failed to convey, "[t]here is no valid reason why the same measure of damages should not be applied when the purchaser obtains a tardy conveyance without the necessity of seeking specific performance." *Christensen*, 343 P.2d at 345; *see also Houston & T.C.R. Co.*, 38 S.W. at 837 (same).[21] Consistent with this case law, the treatises and commentators appear to be unanimous on this point: a term fixing the time for performance does not merge into the deed.[22]

The soundness of a rule is often confirmed by an examination of the effects of the contrary rule. That is the case here; were a contractual time of performance obligation to be merged into the deed, a tardy vendor could avoid the liability contemplated by the time of performance clause simply by tendering a deed that lacked an express reservation of delay damages. The vendee would then face a dilemma: either accept the deed and forfeit the cause of action, or reject the deed and sue the vendor for specific performance and damages. But a vendee already aggrieved by a tardy vendor should not be forced to reject the deed and proceed to litigation on the entire transaction to preserve his right to seek damages for an element collateral to both the fact of conveyance and the substance of what was conveyed. Indeed, as the *Christensen* court noted, it is illogical to allow a vendee to sue a tardy vendor for specific performance and damages where the vendor has not yet tendered the deed, while foreclosing the damages remedy merely because tardy performance is tendered. *See* 343 P.2d at 344.

 Moreover, the purposes of the merger doctrine are not met by the contrary rule. On the one hand, the merger doctrine protects the integrity of the deed by ensuring that documents external to the deed involved in the sales transaction cannot alter the meaning, scope, or quality of the deed, or affect the fact of conveyance itself.[23] In this case, as discussed

---

**21.** In that regard, appellants note that in Virginia once a court sitting in equity obtains jurisdiction over a case, that court can provide a legal remedy, even if the equitable remedy becomes moot by later events, such as voluntary performance. *See Turney v. Smith*, 211 Va. 810, 814, 180 S.E.2d 509 (1971); *Grubb v. Sharkey*, 90 Va. 831, 834, 20 S.E. 784 (1894); *Nagle v. Newton*, 63 (22 Grat.) Va. 814, 821 (1872).

**22.** *See* Lawrence Berger, *Merger by Deed— What Provisions of a Contract for the Sale of Land Survive the Closing?*, 21 Real Est. L.J. 22, 63 (1992) ("On the point of merger, it would seem that the [late closing], though clearly deed-related, has resulted in performance at a time beyond that set by the contract, and thus it should be assumed that the buyer would not ordinarily intend to give up the right to damages by accepting the later performance."); Parnell, *supra* note 4, § 13 (1954) ("While the decisions are not numerous, most courts discussing the question appear to have taken the view that an express stipulation as to time of conveyance or possession is not merged in a deed accepted by the vendee and containing no provisions in this respect, particularly where it is shown that time was a primary factor inducing the agreement."); 77 Am.Jur.2d *Vendor & Purchaser* § 290 (1997) ("A stipulation in a contract for the sale of real estate, to deliver a deed at a specified time upon a contingency fully performed, does not necessarily merge in a subsequently delivered and accepted deed."); 92 C.J.S., Vendor & Purchaser § 576(d) (1955) ("Execution and acceptance of a deed at a time subsequent to that fixed for that purpose by the sale contract entitle the purchaser to sue for the damages from delay arising from the breach of the provision as to the time of conveyance; in such a case, the acceptance of the deed when it is tendered does not preclude the action.").

**23.** *See Miller v. Kemp*, 157 Va. 178, 160 S.E. 203 (1931) ("Why should any one be required to look behind the recorded title and run down the preliminary contracts to discover that the parties to a solemn deed have made a mistake?") (quoting *Donaldson v. Levine*, 93 Va. 472, 25 S.E. 541); *cf.* 6 Corbin, *supra*,

above, that concern is not implicated; whether appellee owes appellant damages for delay is irrelevant to the quality or nature of the deed, or the fact that the deed was actually conveyed on a certain date. An additional purpose of the merger doctrine is to protect the integrity of the contracting process by recognizing that a document drafted in the consummation of a transaction typically represents the entire agreement.[24] But this purpose is only implicated by subject matter that should be covered by the deed or that was actually covered by the deed, and as discussed above neither is present in this case. In this case, a term fixing the time of performance is not contradicted by a deed delivered on a later date, nor would such a tardy deed typically record the contemplated settlement date. Thus the doctrine of merger should not apply.

Appellee contends that appellants affirmatively waived the time of performance clause in the course of negotiations with appellee. The current record is inconclusive on this question, and, in any event, appellants contend it is raised for the first time on appeal. If this waiver argument was not made in the proceedings before the Bankruptcy Court, it cannot be made for the first time here, unless a failure to allow the argument to be raised constitutes "plain error" or "a fundamental miscarriage of justice," and no such error or miscarriage of justice is apparent. *See Muth v. United States,* 1 F.3d 246, 250 (4th Cir.1993). Thus, on remand, the Bankruptcy Court should determine (i) whether appellee properly raised the waiver argument before the Bankruptcy Court, and (ii) if so, whether appellants voluntarily waived the time of performance clause

in some way other than by acceptance of the deed.

Accordingly, the Bankruptcy Court's orders of June 22, 1999, allowing appellants' claim in a reduced amount, and July 14, 1999, denying appellants' motion for reconsideration, must be vacated, and this case remanded for further proceedings consistent with this memorandum opinion.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record. An appropriate order will enter.

§ 1319 (evidence of collateral promises is admissible as long as it is not offered "to affect the validity of the deed as a conveyance"); *see also* 6 Corbin, *supra,* § 1319, at 317 (noting that extrinsic evidence of obligations related to a real estate transaction is admissible "if the purpose for which it is offered is the enforcement of promises made by either party and not to affect the validity of the deed as a conveyance").

24. *See Miller v. Kemp,* 157 Va. at 201, 160 S.E. at 210 (holding that deviation between the deed and the original contract reflected "a change in [the parties] original agreement"); 5C Michie's Jurisprudence, *Deeds,* supra, § 107 ("Insofar as a deed varies from a prior executory contract pursuant to which it is executed, such departure is presumed to represent a change mutually agreed upon by the parties before its execution....").