Present: All the Justices

BRUCE A. TAYLOR, ET AL.

v.  Record No. 012583  OPINION BY JUSTICE CYNTHIA D. KINSER
                                          SEPTEMBER 13, 2002
RICHARD R. McCONCHIE, ET AL.

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
George E. Honts, III, Judge

This appeal arises from an amended bill of complaint filed by the appellants, Bruce A. and Karen D. Taylor (the Taylors), seeking injunctive and declaratory relief with regard to an easement for access to their property located in Botetourt County.  Because we conclude that the circuit court did not err in finding that the original easement had been extinguished and that, under the terms of a new, relocated easement, the Taylors' access to their property is now limited to vehicular and pedestrian traffic, we will affirm that aspect of the court's judgment.  However, we hold that the court abused its discretion in refusing to allow the Taylors to present evidence about their ability to access their property in light of a post-trial survey changing a small portion of the easement.  Accordingly, we will remand for further proceedings.

I.  FACTS AND MATERIAL PROCEEDINGS

The easement at issue was first created in 1949 when Philip and Kate S. Kohen conveyed a 12-acre parcel to Mary

Ann Jane Sink; the parcel was subsequently conveyed to Charles L. Sink (Sink). The deed from the Kohens reserved an easement (the Kohen easement) over the property being conveyed "so that [the Kohens could] get to their remaining lands adjoining the land sold by this deed,-from the [present Virginia Secondary Route 635]." The deed specified that the "road-way . . . shall be of sufficient width to permit the free and convenient passage of motor vehicles and farm vehicles with loads of hay and other farm products, and with further sufficient width for cuts and fills, and to permit the convenient working of said road."

In 1997, the Taylors entered into a real estate contract to purchase a parcel of property, which is the dominant estate served by the easement at issue, from Patrick D. and Ann M. McClave (the McClaves). The contract between those parties provided, in pertinent part, that:

> The Sellers herein covenant[] that [they have] a legal right-of-way through the lands of the adjoining property owners to the State Road for the new road [the Sellers have] constructed and furthermore that said right-of-way may be used if the land subject to this contract is subdivided. This covenant shall survive closing.

After the execution of this contract with the Taylors but prior to closing, the McClaves entered into a "DEED OF

2

EASEMENT AND AGREEMENT" with Sink.[1]  The agreement expressly abandoned the Kohen easement (referred to in the agreement as the "Original Easement"), but created a new, relocated easement across the servient property to Virginia Secondary Route 635.  The servient property identified in this agreement included not only the 12-acre parcel that was originally the servient property with regard to the Kohen easement, but also two additional parcels that are adjacent to the 12-acre parcel.  The terms of the agreement granted the McClaves "a nonexclusive Right-of-Way Easement for vehicular and pedestrian access from the southern boundary of the [McClave property] across the [Sink property] to Virginia Secondary Route 635" (the McClave/Sink easement).  The McClave/Sink easement was expressly "delimited by the existing 'New Shale Surface Road', as the same is now located, constructed, graded, and drained, as shown to scale on a Plat of Survey" recorded with the deed and agreement.  It was situated slightly to the east of the Kohen easement, except at the southern terminus near the state route, where the two easements generally coincided.

In December 1998, the Taylors and the McClaves closed on the real estate contract between them.  The deed from

---

[1] The agreement appears to have been in settlement of a suit instituted by Sink against the McClaves.  Sink had

the McClaves conveyed, along with the property, the right-of-way described in the "DEED OF EASEMENT AND AGREEMENT" between the McClaves and Sink, i.e., the McClave/Sink easement, and specified that the conveyance was subject to the McClave/Sink easement agreement.  However, the deed from the McClaves to the Taylors did not refer to the Kohen easement.

In the spring of 1999, Richard R. and Christina G. McConchie (the McConchies), who owned property adjacent to the "New Shale Surface Road" (the shale road), challenged the Taylors' route of access, claiming that the roadway the Taylors were using crossed over the McConchies' property. In July, the Taylors received a "bar notice" from Sink, advising that their right of access was limited to the shale road as shown on the plat recorded with the McClave/Sink easement agreement.  Later, both the McConchies and Sink erected fences that, according to the Taylors, restricted their access and made it impossible for a cattle truck to travel along the road without the prior removal of some of the fence posts.  The Taylors then filed the present suit, naming as defendants Sink and the McConchies.

also named the Taylors as defendants in that suit.

4

At trial, the evidence showed that the McClave/Sink easement encroached on the McConchies' property by about four feet near the southern end of the shale road. It was also established that, while the stated purpose of the McClave/Sink easement was to provide vehicular access "from the southern boundary of the [Taylor property] to Virginia Secondary Route 635," the language of the agreement limited the location of the easement to the shale road, but that road did not extend to the state route. The evidence showed that the Kohen easement also fell short of reaching the present location of the state road by approximately 20 feet.

The circuit court held that the Kohen easement had been "supplanted" by the McClave/Sink easement. The court then found that Sink had breached the special warranty of title given in the deed of easement to the McClaves, the Taylors' predecessor in interest, and that the Taylors were, therefore, entitled not only to access their property via the shale road as specified in the McClave/Sink easement, but also to have access across Sink's property from the ending point of the shale road to the state route, thereby fulfilling the easement's intended purpose. After announcing its decision from the bench, the court instructed a surveyor on the particulars of that decision

5

and directed the surveyor to prepare a plat reflecting the court's ruling.

After receiving the new survey, the Taylors moved the court to reconsider its decision, contending that the easement awarded by the court was only 7.05 feet wide at a point near the state route and thus too narrow to provide vehicular access to their property. Treating the motion as one to introduce newly-discovered evidence, the court denied the motion and entered its final decree, attaching a copy of the new plat. The Taylors appeal from that decree.

## II. ANALYSIS

On appeal, the Taylors raise three assignments of error. First, they assert that the circuit court erred in finding that the Kohen easement had been extinguished and argue that it was conveyed to them in addition to the McClave/Sink easement. Next, they contend that the easement awarded by the circuit court is insufficient to provide vehicular access to their property, as assured by both easements. Finally, the Taylors contend that they should have been permitted to present evidence concerning the impact of the post-trial survey that was attached by the circuit court to its final decree.

As to their first assignment of error, the Taylors contend that, by virtue of their contract to purchase the

McClaves' property, they acquired an equitable interest in the Kohen easement and that, since they were not parties to the agreement establishing the McClave/Sink easement, their interest in the Kohen easement was not extinguished by that agreement. The Taylors also point out that, although their deed from the McClaves did not mention the Kohen easement, it nevertheless included the provision that "[t]his Deed is made subject to all easements, restrictions, and conditions of record affecting the hereinabove-described property."

We agree with the Taylors' position that an easement remains with the dominant estate to which it is appurtenant and passes to a subsequent grantee even though not specifically mentioned in the deed to that grantee. See Code § 55-50; Corbett v. Ruben, 223 Va. 468, 473-74, 290 S.E.2d 847, 850 (1982). Likewise, upon execution of the real estate contract with the McClaves, the Taylors became vested of an interest in the McClaves' property, including the appurtenant Kohen easement. See Carmichael v. Snyder, 209 Va. 451, 454-55, 164 S.E.2d 703, 706 (1968). Nevertheless, these principles do not resolve the issue raised here.

The agreement creating the McClave/Sink easement specifically stated that the parties were abandoning the "Original Easement" (the Kohen easement) and creating a

new, relocated easement across the servient property.[2]  That new easement was confined to the area where the shale road had been constructed.  The McClave/Sink agreement was in accord with the McClaves' covenant, included in their real estate contract with the Taylors, that they had a right-of-way through the lands of the adjoining property owners to the state route along the new road that they had constructed (the shale road).  Similarly, the deed from the McClaves to the Taylors included the right-of-way described in the McClave/Sink easement agreement and made the conveyance to the Taylors subject to that agreement which, as already stated, abandoned the Kohen easement.  Thus, when the deed from the McClaves was delivered and accepted by the Taylors, any rights to the Kohen easement that the Taylors may have acquired by virtue of the real estate contract, despite its specific reference to the new road constructed by the McClaves, were extinguished under the doctrine of merger.[3]  "The rule is that when a deed is

---

[2] The term "abandonment" means "[t]he relinquishing of a right or interest with the intention of never again claiming it."  Black's Law Dictionary 1 (7th ed. 1999).

[3] Notably, in a letter introduced into evidence, the Taylors' attorney advised them that if they closed on the contract with the McClaves, they would be waiving the right to pursue any cause of action that they might have against the McClaves concerning the right-of-way.

executed and accepted in performance of a prior preliminary contract, the deed, if unambiguous in its terms, and unaffected by fraud or mistake, must be looked to alone as the final agreement of the parties." Woodson v. Smith, 128 Va. 652, 656, 104 S.E. 794, 795 (1920); accord Davis v. Tazewell Place Assocs., 254 Va. 257, 262, 492 S.E.2d 162, 165 (1997); Miller v. Reynolds, 216 Va. 852, 854-55, 223 S.E.2d 883, 885 (1976).

Nor does the language in the Taylors' deed stating that the conveyance was "subject to all easements, restrictions, and conditions of record" affecting the property change our conclusion. That provision serves merely to acknowledge that any existing rights are excepted from the conveyance and continue to limit the Taylors' fee simple interest. See Davis v. Henning, 250 Va. 271, 275, 462 S.E.2d 106, 108 (1995). Thus, we conclude that the circuit court did not err in finding that the Taylors no longer have any rights under the Kohen easement.

Consequently, we also conclude that the circuit court did not err in construing the Taylors' easement as one for solely vehicular and pedestrian access to their property. The Taylors assert that the court erred in limiting the width of the easement to 7.05 feet at a point near the state route. According to the Taylors, that limitation in

9

the width made the easement too narrow for "vehicular access" as assured by the easement conveyed to the Taylors in their deed. Relying on the language in both the McClave/Sink easement and the Kohen easement, the Taylors argue that, while a passenger automobile may be able to "squeeze through" this 7.05-foot "gateway", a larger vehicle or farm equipment cannot do so, especially in light of the sharp left turn that must be negotiated after passing through the 7.05-foot opening.

To the extent that the Taylors claim that the character of their easement remains as it was under the Kohen easement, they are mistaken. The deed creating the Kohen easement specifically stated that the easement was to be of sufficient width to allow for the free passage of motor vehicles and farm vehicles. However, when the Kohen easement was abandoned in the agreement between the McClaves and Sink, not only was the easement relocated, its purpose was also changed. That change is evidenced by the language in the "DEED OF EASEMENT AND AGREEMENT" specifying "a nonexclusive Right-of-Way Easement for vehicular and pedestrian access from the southern boundary of the Dominant Property across the Servient Property to Virginia Secondary Route 635." In other words, the easement no longer provided access for farm equipment.

10

However, we do agree with the Taylors that the circuit court abused its discretion by refusing to reopen the evidence after the post-trial plat was prepared.  Relying on our decisions in Odum v. Commonwealth, 225 Va. 123, 301 S.E.2d 145 (1983) and Fulcher v. Whitlow, 208 Va. 34, 155 S.E.2d 362 (1967), the court held that the Taylors had not satisfied the criteria for granting a new trial on the basis of newly-discovered evidence.  While not necessarily dispositive of the issue, we note that those cases dealt with motions for a new trial, whereas the Taylors merely sought to reopen the evidence and did not ask for a new trial.

It is apparent from the plat depicting the McClave/Sink easement and from testimony that the easement narrows to a width of 7.05 feet at a point where there is a sharp left turn in the roadway as one travels along the easement from the state route.  That is the same narrow "gateway" about which the Taylors complain, but it did not come about as a result of the circuit court's finding that a small part of the shale road encroached upon the McConchies' property.  That narrow portion in the easement existed when the McClave/Sink easement was created and is shown on the plat recorded with that deed of easement.  However, when the plat was prepared post-trial to reflect

11

the circuit court's ruling, the area in which to negotiate the sharp left turn in the easement, and thus the angle of that turn, changed because the court shifted a small section of the easement eastward in order to correct the encroachment upon the McConchies' property. Consequently, the Taylors asserted in their motion to reopen the evidence that their ability to use the easement for vehicular and pedestrian access to their property had been adversely affected. Two photographs introduced into evidence depict an automobile passing through this 7.05-foot-wide area, but those pictures do not demonstrate the extent to which the angle of the turn has been affected.

The plat establishing the location of the Taylors' easement and changing the angle of that turn was not available to the parties until after the trial. While the court and the surveyor discussed the court's decision with the parties by making some pencil marks on the plat of the McClave/Sink easement, the parties did not know the exact change in the location of the easement until the post-trial plat was prepared. More importantly, the Taylors could not have understood what impact, if any, the court's proposed ruling would have on the use of their easement for vehicular access to their property until they had the plat in hand and could actually use the easement with the

12

changes effected by the court.  On this basis, we conclude

that the court abused its discretion in refusing to permit

the Taylors to introduce additional evidence on that point.

For these reasons, we will affirm in part and reverse

in part the judgment of the circuit court and remand for

further proceedings in accordance with this opinion.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and remanded</u>.