## CIRCUIT COURT OF FAIRFAX COUNTY

Samuel I. White, P.C.,
Substitute Trustee

v.

Stephen A. Caudle et al.

August 12, 2004

Case No. (Chancery) 184721

BY JUDGE R. TERRENCE NEY

This matter came before the Court on June 23, 2004, pursuant to Complainant Samuel I. White, P.C.'s (" Trustee" ) Motion for Aid and Direction as to ownership of property located at 8633 Sacramento Drive in Alexandria, Virginia.

### I. *Facts*

In early 2000, Victor Cruz and Marlene Cardozo agreed to purchase 8633 Sacramento Drive (" Sacramento Property" ) from Stephen and Karen Caudle.[1] Closing occurred on April 24, 2000, at the offices of Charles W. Hazelwood, Esquire, in Springfield, Virginia.

---

[1] In connection with this transaction, the Caudles worked with one Carlos Velasquez, a broker and alleged agent of Financial Business Aid (" FBA" ), a Virginia lender. FBA allegedly served as Velasquez's financing partner in arranging the sale of the Caudles' property. Although

Cruz and Cardozo signed a First Note and Deed of Trust (the "FBA First Deed of Trust")[2] committing them to $466 monthly payments and a balloon payment of $40,204 due in five years.[3] In addition, Cruz and Cardozo executed a promissory note (the "Note") payable to the Caudles in the amount of $69,800. The Note was secured by a Second Note and Deed of Trust (" the Second Deed of Trust"),[4] committing Cruz and Cardozo to full payment to the Caudles within three months of closing.

Cruz and Cardozo never made any payments to the Caudles under the Second Note and/or Deed of Trust.

On April 11, 2001, the Caudles filed suit in the United States District Court for the Eastern District of Virginia alleging fraud and malpractice against Charles Hazelwood, the settlement agent who presided at the April 24, 2000, closing, and raising various fraud and negligence claims against FBA and Carlos Velasquez[5] in connection with the sale of the Sacramento property.

---

Velasquez represented in the Contract of Sale he signed with the Caudles that the "Velasquez Corporation" would purchase the property, Cruz and Cardoza were in fact the actual buyers.

[2] FBA is the beneficiary of the First Deed of Trust recorded in the Office of the Clerk of this Court in Deed Book 11330 at page 376. See Exhibit 16, attached to the parties' *Joint Stipulation of Facts Not in Dispute*. By Substitution of Trustee Document dated August 8, 2001, recorded in the Clerk's Office in Deed Book 12139 at page 0688, Christopher W. Conroy was appointed Substitute Trustee under the FBA Deed of Trust.

[3] The FBA First Deed of Trust contains various provisions regarding the right of FBA to collect attorney's fees in the event of issues regarding the Lender's rights in the property. The Section entitled "Borrower's Covenants" provides for a Borrower's warranty that it "will defend generally the title to the property against all claims and demands, subject to any encumbrance of record." *See FBA Deed of Trust* at page 3. In addition, Section 7 provides that, "if the Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect the Lender's rights in the Property . . . then Lender may do and pay for whatever is necessary to protect the value of the property and Lender's rights in the Property. Lender's actions include . . . appearing in court [and] paying reasonable attorney's fees. . . . Any Amount disbursed by Lender under this paragraph 7 shall become *additional debt of Borrower* secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment." *Id.* at page 5.

[4] Charles W. Hazelwood, Jr., was initially designated Trustee under the Second Deed of Trust. By Substitution of Trustee document dated August 7, 2001, recorded in the Clerk's Office in Deed Book 11330 at page 370, the Caudles appointed and substituted Samuel I. White, P.C., in place of Mr. Hazelwood, conveying all powers, duties, and obligations named in the Second Deed of Trust to Samuel I. White, P.C. See Exhibit 1 attached to the parties' *Joint Stipulation of Facts Not in Dispute*.

[5] See note 1, *supra*. On December 20, 2000, Velasquez was indicted in the United States District Court for the Eastern District of Virginia on two counts of conspiracy to commit wire fraud and two counts of wire fraud. On February 13, 2001, Velasquez pleaded guilty to conspiracy and unlawful monetary transaction and is currently serving 22 years in jail.

In addition, the Caudles sought rescission of the sale of the property and the First and Third Deed of Trusts,[6] contending they were void, and sought declaratory relief against FBA, requesting that FBA's interests be declared subordinate to that of the Caudles.

On August 3, 2001, the Trustee made demand upon Cruz and Cardozo for $76,780, the amount due under the Caudle's Note.

After Cruz and Cardozo failed to respond to Trustee's demand for payment, the Caudles initiated foreclosure proceedings under the Second Deed of Trust. The Trustee published a Notice of Sale by advertisement in the *Washington Post*, which stated that the sale was "subject to" the FBA First Deed of Trust. See parties' *Joint Stipulation of Facts Not in Dispute*, & 11.

On December 7, 2001, the Trustee sold the Sacramento property at public auction (the "2001 Foreclosure" ) to the Caudles. The Caudles purchased the property for $81,150, an amount over and above that actually owed under their Note.[7]

As a result of the foreclosure, the Trustee prepared a Deed of Foreclosure (the "Trustee's Deed" ) dated December 7, 2001, reflecting the amount of the *Requested* Bid, $78,341.35, as opposed to the *Actual* Bid of $81,150.[8] The Trustee's Deed was recorded in the Clerk's Office on December 27, 2001.

On January 3, 2002, FBA demanded from the Caudles, as the new owners of the property, the amount due under the FBA First Note, as well as the $32,000 "incurred" by FBA in defense of the federal suit instituted by the Caudles.[9]

---

[6] Cruz and Cardozo signed a Third Deed of Trust, permitting FBA to foreclose on the Sacramento Drive property under certain circumstances involving other property and another set of buyers not before the Court.

[7] On December 3, 2001, the Caudles, through their attorney, sent a letter (the "Debt Letter" ) to the Trustee claiming $78,341.35 as the total amount of indebtedness owed on the Note. See copy of Debt Letter, attached as Exhibit 10 to the parties' *Joint Stipulation of Facts Not in Dispute*.

[8] See copy of Trustee's Deed, attached as Exhibit 5 to the parties' *Joint Stipulation of Facts Not in Dispute*. On December 7, 2001, the Trustee wrote a Letter to the Caudles, through counsel, stating "the property identified above was sold at public auction on 12/7/01 to [the Caudles] for $78,341.35. We enclose a copy of two party deed for your file, which will be forwarded to the Court for recordation immediately." See copy of Letter, attached as Exhibit 3 to the parties' *Joint Stipulation of Facts Not in Dispute*.

[9] See copy of Demand Letter dated January 3, 2002, attached as Exhibit F to the Caudles' Motion for Reconsideration of the Court's December 7, 2002, Order, the latter of which is attached as Exhibit J to the Trustee's Bill of Complaint to Quiet Title. In response to the Demand Letter, the Caudles sought injunctive relief in the United States District Court for the Eastern District of Virginia to enjoin FBA from foreclosing on the Sacramento property under the First Note on the grounds that said Note was procured by fraud in the inducement. The Caudles' motion was denied by the Court for lack of jurisdiction.

On January 21, 2002, the Caudles requested that the Trustee re-auction the property due to the latter's clerical error in submitting a bid in excess of the one requested.[10]

In response to the Caudles' request, the Trustee prepared a Quitclaim Deed dated January 28, 2002,[11] transferring the Property from the Caudles back to Cruz and Cardozo in order to initiate a second foreclosure. The Quitclaim Deed was made "subject to" both the FBA First Deed of Trust in the amount of $43,000 and the Second Deed of Trust in the amount of $69,800. The Caudles signed the Quitclaim Deed, which was recorded in the Clerk's Office on February 6, 2002.[12]

On March 1, 2002, the Trustee, after advertising a Notice of Sale, sold the Sacramento property at public auction to Sunil Aurora for a bid of $60,000.[13] Aurora subsequently defaulted on the purchase.[14]

On May 2, 2002, the U.S. District Court, in the federal litigation, denied the Caudles' claims for rescission of the sale of the property based on a finding of "unclean hands" on the part the Caudles.[15]

On May 6, 2002, the Caudles filed a Bill of Complaint in this Court seeking to Void the Foreclosure Sale of December 7, 2001, based on the Trustee's improper bid. See copy of the Bill of Complaint, Chancery No. 178158, *Stephen Caudle et*

---

[10] In their January 2002 letter to the Trustee, the Caudles' attorney wrote, "You indicated to me last week that the actual bid price entered for the Caudles in the above-referenced auction, over $81,000 . . . was not the one requested. . . . In addition, you had indicated to me that was the result of a clerical error. . . . I ask that you re-auction the property. The Caudles will be in touch with you about a new bid price." See a copy of the January 21, 2002, Letter, attached as Exhibit 4 to the parties' *Joint Stipulation of Facts Not in Dispute.*

[11] See copy of Quitclaim Deed, attached as Exhibit 6 to the parties' *Joint Stipulation of Facts Not in Dispute.*

[12] On November 8, 2002, Cruz and Cardozo recorded a Confirmation of Deed in the Clerk's Office confirming and accepting the Quitclaim Deed. See a copy of the Confirmation Deed, attached as Exhibit 7 to the parties' *Joint Stipulation of Facts Not in Dispute.*

[13] The Caudles' made an opening bid of $40,000.

[14] Aurora paid a bidder's deposit of $5,000 towards the purchase price but subsequently defaulted on the purchase for reasons not associated with the issues in this case. The $5,000 deposit was forfeited and remains in the trust account of the Trustee.

[15] *See Caudle v. Hazelwood*, No. CA-01-576 (E.D. Va. filed June 10, 2002; entered June 11, 2002). In the federal litigation, evidence was presented that the Caudles, through Velasquez, changed the sales price of the Sacramento property for tax purposes as part of a "Price-Skewing Scheme." In response to the Caudles' Motion for Reconsideration, the Court declined "to further prejudice the individual home buyers or the first trust lender by granting equitable relief to those who created their own problems." See Judge Brinkema's Order dated June 10, 2002. Although the Court granted summary judgment in favor of FBA and, *sua sponte*, dismissed Cruz and Cardozo from the federal case, it permitted the Caudles' claims against Hazelwood, including conspiracy and aiding and abetting fraud, to proceed to trial.

*al. v. Samuel I. White, P.C., et al.*, attached as Exhibit 9 to the parties' *Joint Stipulation of Facts Not in Dispute.*

On December 7, 2002, the Court[16] entered an Order denying the Caudles' Motion to Void the 2001 Foreclosure Sale, but granting the Caudles "leave to file within 21 days a Motion to require the Commissioner of Accounts to accept a new Deed of Foreclosure at the price bid by the Trustee of $81,250." [17]

On December 18, 2002, the Caudles filed a Motion for the Issuance of a New Deed of Foreclosure requesting that the new deed supercede the Quitclaim Deed dated January 28, 2002, and seeking to remove any clouds on the title to the property. See copy of Motion for Issuance of a Deed of Foreclosure, attached as Exhibit 12 to the parties' *Joint Stipulation of Facts Not in Dispute.*

On January 10, 2003, the Court granted the Caudles' request for the Issuance of a New Deed of Foreclosure, but denied their request regarding the effective date of the new deed.[18]

Pursuant to the Court's Orders of December 7, 2002, and January 10, 2003, respectively, on January 24, 2003, the Trustee filed an accounting with the Commissioner of Accounts, which recited the $81,150 bid for the Sacramento property.[19] In addition, a Deed of Correction and Confirmation dated January 24, 2003, conveying the property to the Caudles, was recorded in the Clerk's Office by the Trustee.[20]

On June 20, 2003, the Trustee instituted the current suit seeking the Court's aid and direction to determine the proper right, title, and ownership to the property,[21] as neither of the Court's prior Orders addresses the validity of

[16] The Honorable Randy I. Bellows presided over the December 6, 2002, hearing.

[17] See a copy of the Court's Order dated December 7, 2002, attached as Exhibit 11 to the parties' *Joint Stipulation of Facts Not in Dispute.* The Court also directed the Trustee to file an accounting with the Commissioner of Accounts, pursuant to Va. Code Ann. ∋ 55-59, within two weeks of his ruling. On January 13, 2003, the Court denied the Caudles' Motion to Reconsider its December 6, 2002, ruling. See copy of the Court's Order dated January 13, 2003, attached as Exhibit 15 to the parties' *Joint Stipulation of Facts Not in Dispute.*

[18] The Honorable Kathleen H. MacKay presided over the January 10, 2003, hearing. See a copy of the Court's Order dated January 10, 2003, attached as Exhibit 14 to the parties' *Joint Stipulation of Facts Not in Dispute.*

[19] By letter dated November 3, 2003, the Commissioner of Accounts advised the Trustee that the accounting was suspended pending the outcome of the Trustee's Motion for Aid and Direction now before the Court.

[20] See copy of the Deed of Correction, attached as Exhibit 8 to the parties' *Joint Stipulation of Facts Not in Dispute.* On July 3, 2003, counsel for FBA sent a letter to the Trustee disputing the recitals in the Deed of Correction. See copy of FBA July 3, 2003, Letter to Trustee, attached as Exhibit 17 to the parties' *Joint Stipulation of Facts Not in Dispute.*

[21] A trustee may not permit the insistence of the creditor in seeking to realize on security to force a sale which would unfairly injure the debtor. *See Bremer v. Bittner*, 44 Va. Cir. 505 (Fairfax 1996), citing *Linney v. Normoyle*, 145 Va. 589, 134 S.E. 554 (1926). In particular, a trustee has

the Quitclaim Deed. The parties agree that having both the Quitclaim Deed and Deed of Correction and Confirmation recorded with the Clerk's Office create a cloud on the title.

Specifically, the Trustee seeks an Order (1) nullifying the Quitclaim Deed dated January 28, 2002; (2) confirming title in and to the Sacramento property with the Caudles; and (3) granting possession of the Sacramento property to the Caudles.

To date, the Second Deed of Trust, the subject of the 2001 Foreclosure, remains in default. Cruz and Cardozo, who claim ownership of the property by virtue of the Quitclaim Deed, have made no payments towards the Second Note dated April 24, 2000.

## II. *Analysis*

The issue before the Court is two-fold. First, the Court must determine the validity of the Quitclaim Deed in order to resolve the question of ownership with respect to the property. Second, once rightful ownership is established, the Court must determine to what liens, if any, the property is currently subject.

### A. *Validity of Quitclaim Deed*

In determining the proper right, title, and ownership of the property, the Court must first address the validity of the Quitclaim Deed. Presently, Cruz and Cardozo claim ownership of the Sacramento property free and clear of the Second Deed of Trust by virtue of the Quitclaim Deed dated January 28, 2002.

In response, the Caudles ask this Court to nullify the Quitclaim Deed, because its sole purpose, to permit a second foreclosure on the property due to a presumed defect with the first foreclosure, was rendered a nullity by this Court's December 6, 2002, Order, which specifically held the first foreclosure to be valid.[22]

In construing deeds, the Court must look to the intent of the parties, taking into account the language used, and the general purpose and scope of the instrument in light of the surrounding circumstances. *Davis v. Henning*, 250 Va. 271, 274, 462 S.E.2d 106, 108 (1995). When such intention appears by giving the words their natural and ordinary meaning, technical rules of

---

a duty to seek the aid and direction of a court of equity before foreclosing if the amount of the debt is uncertain. *Id.*, citing *Morris v. Virginia State Ins. Co.*, 90 Va. 370, 18 S.E. 843 (1893). And, a trustee is obligated to seek such aid and direction on his own motion. *Id.*, citing *Hogan v. Duke*, 61 Va. (20 Gratt.) 244, 253 (1871).

[22] In addition, the Caudles raise issues of lack of consideration and unjust enrichment in support of their request to have the Quitclaim Deed rendered invalid and void.

construction will not be invoked. *Id*. Furthermore, the Court must look to what the words express, not what the grantor may have intended to express. *Id*., 250 Va. at 275, 462 S.E.2d at 108.

Here, the express meaning of the language used in the Quitclaim Deed is clear. Notwithstanding, it is also clear to the Court that the Quitclaim Deed, which transferred the Sacramento property from the Caudles back to Cruz and Cardozo, was executed *for the sole purpose* of conducting a second foreclosure in order to correct a perceived defect with the 2001 Foreclosure.[23]

In considering the undisputed intent of the parties in issuing the Quitclaim Deed in light of the surrounding circumstances — not even to mention the Court's Order of December 7, 2002, upholding the 2001 Foreclosure — the Court finds the Quitclaim Deed to be null and void. As a result, the parties are returned to the status quo *prior to* its recordation, thus making the Caudles the rightful owners of the property.

## B. *Existing Liens on the Sacramento Property*

The Court must next determine to what liens, if any, the property is currently subject.

### 1. *Second Deed of Trust*

Virginia law concerning the merger of mortgages is well established. The merger doctrine addresses the extinguishment of a previous contract by "an instrument of higher dignity." *Empire Mgmt. & Dev. Co. v. Greenville Assocs.*, 255 Va. 49, 52, 496 S.E.2d 440, 442 (1998). The extinguishing instrument must be of a higher dignity or at least put the claimant in a better condition. *McGuire v. Gadsby*, 7 Va. (3 Call) 234 (1802).

When applied to the sale of real property, the deed of conveyance is generally considered to represent the final agreement of the parties, and all prior agreements are deemed merged into the conveyance deed. *Empire Mgmt.*, 255 Va. at 52, 496 S.E.2d at 442. Thus, when a creditor acquires absolute title to property which secures his debt, in the absence of evidence showing a contrary intention, it is presumed that he intended to merge his secured interest into the legal title acquired.[24]

---

[23] The parties' intent to return to the status quo in order to enable the Trustee to re-foreclose the property is further evidenced by Cruz and Cardozo's acceptance of the Quitclaim Deed, which expressly made it "subject to" both the FBA Deed of Trust and the Second Deed of Trust, the doctrine of merger notwithstanding. See *infra*.

[24] *Joyner v. Graybeal*, 204 Va. 543, 132 S.E.2d 467 (1963) (merger deemed to have occurred where creditor demonstrated a clear intention to extinguish his lien at the time title was transferred to him by directing that the word "None" be written in the transfer clause on the back of the title certificate where outstanding liens were to be noted.) In addition, a subsequent

Here, the Caudles took absolute title, both legal and equitable, to the property when they accepted the Trustee's Deed of Foreclosure, as, at that point, the trust and the trust beneficiary were combined in the Caudles. In addition, since the Deed of Foreclosure expressly stated that the Caudles were taking the property subject to only the FBA First Deed of Trust, the Second Deed of Trust was extinguished.[25]

Thus, as a result of the 2001 Foreclosure sale and in the absence of any evidence to rebut the presumption of merger, the Court finds that the Second Deed of Trust was merged into the Deed of Foreclosure and that the Caudles took free and absolute title to the property subject only to the FBA First Deed of Trust. See also Trustee's *Memorandum in Support of Substitute Trustee's Motion for Aid and Direction of the Court* at page 9 (" upon delivery of the trustee's deed, a foreclosure purchaser receives both equitable and legal title to the subject property free from any lien of the deed of trust. It is at this point that merger occurs, but only merger of the legal and equitable titles.")

### 2. *FBA Deed of Trust*

Last, the Court must determine the amount of the FBA First Deed of Trust, which remains a lien on the property.[26]

At the time of purchase, Cruz and Cardozo owed FBA $43,000.[27] As a result of the 2001 Foreclosure, the Caudles took title to the property subject to this amount and the terms of the Trust. See *supra*.

According to FBA, since December 7, 2001, the date of the first foreclosure, FBA has incurred substantial legal fees as a result of both the federal litigation and

---

contract which does not by express terms abrogate an earlier contract will nevertheless operate as a discharge thereof it if is inconsistent with such earlier contract. To operate as a discharge, in the absence of an express agreement to that effect, the new contract must be clearly inconsistent with the continued existence of the original contract. See *Myers v. Carnahan*, 61 W. Va. 414 (1907). The merger doctrine, however, is not absolute. It only applies to subject matter specifically covered by the deed and subject matter that is not collateral to the passage of title. See *Meurer v. Tribby (In re Tribby)*, 241 B.R. 380 (1999).

[25] "*Inclusio unius est exclusio alterius.*" The inclusion of one is the exclusion of the other.

[26] See *Joint Stipulation of Facts Not in Dispute*, & 11. The Notice of Sale specifically stated that the sale would be "subject to a prior deed of trust dated April 24, 2000, and recorded in Deed Book 1330 at page 362." As such, the Trustee expressly indicated that the FBA Deed of Trust would not be paid off by the Trustee, but rather would have to be paid by the foreclosure purchaser. *See also* the Trustee's Deed of Foreclosure, attached as Exhibit 5 to the parties' *Joint Stipulation of Facts Not in Dispute*.

[27] On May 14, 2004, FBA, Cruz, and Cardozo entered into a Modification Agreement whereby the parties agreed to $140,000 as the amount of the FBA payoff. In addition, Cruz and Cardozo agreed to continue paying the Note secured by the FBA Deed of Trust in accordance with their *original* schedule of payments, namely $466 monthly payments and a balloon payment of $40,204, acknowledging that the larger sum is due on May 1, 2005. Given the Court's finding that the Quitclaim Deed is null and void, the Modification Agreement referenced above is also a nullity, as Cruz and Cardozo are not the rightful owners of the Sacramento Property.

this action. To date, FBA contends that the amount of the FBA First Deed of Trust is $175,000. As a result, FBA seeks to hold the Caudles responsible for such fees as owners of the property pursuant to its Deed of Trust.

The Caudles assert, however, that the current payoff value of the FBA First Deed of Trust is only $41,265. In addition, they argue that FBA cannot add the attorney's fees it expended in furtherance of the FBA Deed of Trust because it was allegedly procured by fraud, and, as a result, is void.

Paragraph 6 of the FBA Deed of Trust provides that the "Borrower shall be in default if any forfeiture action or proceeding ... is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise *materially impair the lien* created by this Security Agreement or Lender's security interest." See Paragraph 6 of the FBA First Deed of Trust, attached as Exhibit 16 to the parties' *Joint Stipulation of Facts Not in Dispute*. Paragraph 7 further provides that, in the event the Lender's title is questioned, the Borrower is required to pay for the Lender's defense.[28]

In Virginia, a stipulation in a note for attorney's fees is a valid, binding, and enforceable contract. *Merchants and Planters Bank v. Forney*, 183 Va. 83, 31 S.E.2d 340 (1944). A lien for such attorney's fees extends to subsequent transferees of the property. *University of Richmond v. Stone*, 148 Va. 686, 139 S.E. 257 (1927). In Virginia, "subsequent purchasers of the land, who assume payment of a mortgage in general terms, are personally liable for all that may be actually due upon it, for which the mortgagor may be liable, including attorney's fees." *Id.*, 148 Va. at 697, 139 S.E. at 261; *see also Fumiko Mitsuuchi v. Security First National Bank of Los Angeles*, 229 P.2d 376 (1951) (lender entitled to defend security and receive costs of its defense from owner under the indemnity provisions of the trust deed).

Here, the Caudles' suit against FBA clearly sought to impair FBA's interest in the property. In addition, the Caudles, from as early as July 2001, had ample notice of FBA's intention to claim reimbursement for its attorney's fees and were aware of FBA's position that that all attorney's fees incurred by FBA regarding the Caudles' lawsuit would be treated as additional debt secured by the Trust on the property.[29]

---

[28] See note 3, *supra*. Under Paragraph 7 of the FBA First Deed of Trust, "any amount disbursed by Lender under this paragraph 7 shall become *additional debt of Borrower* secured by this Security Instrument."

[29] See *supra. See also* the Caudles' Letter to the Commissioner of Accounts dated May 23, 2003, wherein the Caudles, through counsel, acknowledge, "Virginia courts recognize the right of a security holder to submit reasonable attorney's fees and related costs incurred in the defense of a security interest," citing to *Dermott v. Carter*, 151 Va. 81 (1928); *Cullup v. Leonard*, 97 Va. 256, 33 S.E. 611 (1899).

For example, the payoff statement dated December 5, 2001, given to the Trustee reflected a balance of $73,001.88, more than $30,000 over the original principal balance of the FBA Note.[30] Also, FBA's Demand Letter dated January 3, 2002, to the Caudles gave notice that the outstanding balance at that time was approximately $75,549.55 and notified the Caudles of the risk of liability for FBA's additional attorney's fees. See *supra*.

Notwithstanding, the Caudles assert that the underlying instrument is void, as it was allegedly procured by fraud on the part of Velasquez, an agent of FBA.[31] As such, the Caudles assert that FBA is entitled only to its equitable claim in the Sacramento property.[32]

Although contracts which are procured by fraud in the inducement are void and unenforceable,[33] the Caudles have failed to establish any fraud on the part of Velasquez and/or FBA. In addition, such matters have been previously ruled upon in FBA's favor, denied reconsideration,[34] and affirmed on appeal by the United States Court of Appeals for the Fourth Circuit.[35]

In short, the Caudles had notice at the time of the 2001 Foreclosure that the property was subject to the FBA First Deed of Trust, whose balance comprised not only the initial $43,000 loan amount but also the fees incurred by FBA in its defense of the federal litigation. This is plain from both the

---

[30] *See FBA Payoff* Statement dated December 5, 2001, attached as Exhibit B to the Trustee's Supplemental Memorandum dated July 21, 2004. Generally, trustees endeavor to obtain a written payoff statement of the prior trust as of the foreclosure date. The trustee, in turn, will show the payoff statement to prospective bidders to enable them to determine their bid strategy and actual price of the property. Here, the Trustee obtained a written payoff statement from FBA dated December 5, 2001, which indicated a loan balance of $73,001.88 plus per diem of $24.01.

[31] See note 1, *supra*. Moreover, the Caudles argue that FBA's wrongdoing in permitting Velasquez to obtain signatures on an instrument fraudulently bars it from collecting attorney's fees. *See Dent v. Associates Financial Services of Am., Inc.*, 137 B.R. 78 (S.D. Ga. 1992) (a party seeking attorney's fees may not obtain them if said party is guilty of wrongdoing). In response, FBA, through counsel, has filed a Motion for Sanctions against the Caudles on the grounds that the Caudles' allegations of fraud are "false and misleading" and are not supported by the evidence before this Court.

[32] In addition, the Caudles argue that FBA's statement of attorney's fees is deficient in that it (1) fails to itemize which lawyer performed what tasks and in what amounts; (2) seeks "patently unreasonable" fees, and (3) fails to allocate those fees that were expended in connection with the Sacramento property and those expended in the defense of the Village Green First Deed of Trust, the latter of which involved a separate real estate transaction involving Velasquez, the Caudles, and other buyers not at issue in the pending suit.

[33] *See Branham v. Branham*, 254 Va. 320, 491 S.E.2d 715 (1997).

[34] See *Caudle v. Hazelwood*, No. CA-01-576 (E.D. Va. filed June 10, 2002; entered June 11, 2002).

[35] *See Caudle v. Hazelwood*, 66 Fed. Appx. 448 (2003).

terms of the FBA First Deed of Trust and the December 5, 2001, payoff statement provided to the Trustee prior to the first foreclosure.

As a result, the Caudles as owners of the property are liable for any amounts properly due under the FBA First Deed of Trust.

### III. *Conclusion*

For these reasons, the Court finds that the Quitclaim Deed dated January 28, 2002, which purportedly conveyed the property back to Cruz and Cardozo, is null and void. As a result, the Caudles are the rightful owners of the property and entitled to immediate possession thereof.

In addition, as the property was acquired subject to the FBA First Deed of Trust, the Caudles are responsible for any amounts due pursuant to the Trust, which may include FBA's attorney's fees incurred in defense of both the federal litigation and this suit. On June 1, 2004, the FBA payoff amount was calculated at $140,000. According to FBA, however, as of June 21, 2004, it has incurred over $115,000 in attorney's fees, expenses, and costs arising from the Caudle litigation, thus bringing the total amount due under the FBA Deed of Trust to $175,048.22.

Furthermore, the Commissioner of Accounts is directed to resume the accounting previously suspended pending this Court's ruling. See *supra*.

Finally, FBA's Motion for Sanctions filed against the Caudles in response to the Caudles' supplemental brief filed at the Court's request is denied.

### *Order*

This matter came before the Court on June 24, 2004, pursuant to Complainant Samuel I. White, P.C.'s Bill of Complaint to Quiet Title and Motion for Aid and Direction as to the ownership of property located at 8633 Sacramento Drive in Alexandria, Virginia (the "subject property").

For the reasons stated in this Court's opinion letter dated August 12, 2004, which is attached hereto and made a part hereof, it is hereby ordered that the Complainant's Motion for Aid and Direction is granted; and it is further ordered that the Quitclaim Deed dated January 28, 2002, which purportedly conveyed the subject property from Respondents Stephen and Karen Caudle to Victor Cruz and Marlene Cardozo, is null and void; and it is further ordered that the Commissioner of Accounts resume the accounting previously suspended; and it is further ordered that Financial Business Aid's Motion for Sanctions filed against the Respondents is denied.

The Court notes the parties' exceptions to this Order.