## CIRCUIT COURT OF FAIRFAX COUNTY

Stephen A. Caudle
and Karen Caudle

v.

Financial Business Aid

August 18, 2005

Case No. (Chancery) 192840

By Judge R. Terrence Ney

This matter came before the Court on May 12, 2005, upon Respondent Financial Business Aid's ("FBA") Request for Attorney's Fees in the amount of $152,836.70 from Complainants Stephen A. Caudle and Karen Caudle.

For an overview of the historical background leading up to this point, please refer to *Samuel I. White, P.C., Substitute Trustee v. Stephen A. Caudle et al.*, 65 Va. Cir. 377 (Fairfax 2004).

In that decision, the Court did not fully determine the issue of attorney's fees. Rather, the Court ruled that "as the property was acquired subject to the FBA First Deed of Trust, the Caudles [the owners of the property] are responsible for any amounts due pursuant to the FBA Trust, which may include FBA's attorney's fees incurred in defense of both the federal litigation and this suit." *White v. Caudle*, 65 Va. Cir. 377, 387 (Fairfax, 2004). That Opinion Letter is made a part of this Opinion Letter.

On November 16, 2004, Ted Hussar, Esquire, Counsel for FBA, submitted an affidavit which set forth the time he spent and billing for his representation of FBA with regard to the various lawsuits filed by the Caudles, all of which involved property on which FBA held a security interest. At that time, Mr. Hussar represented that FBA's attorney's fees were $131,752.56.

An initial hearing scheduled as to the reasonableness of attorney's fees was continued because Mr. Hussar had not retained an expert to testify as to the reasonableness of the fees charged FBA.

On March 22, 2005, the parties presented evidence as to the reasonableness of the attorney's fees. Mr. Hussar presented testimony from Bernard E. Goodman, Esquire, who testified that the fees that FBA paid or that it owes to Mr. Hussar were necessary, fair, and reasonable. He stated that the litigation instituted by the Caudles was contentious, complex and required enormous effort by FBA to defend its Deed of Trust. Mr. Goodman further testified that the claims of conspiracy, aiding and abetting, negligence, and negligent supervision regarding the Caudle's Second Deed of Trust were so intertwined with the facts regarding the FBA Deed of Trust that the total time spent could not be separated. Mr. Goodman also testified that the revenues received by FBA from its Deed of Trust were no greater than $25,000.

Thomas C. Willcox, Esquire, Counsel for Complainants, presented testimony from Alan Wallace, a real estate expert. According to Mr. Wallace, FBA could have, and should have, foreclosed to protect its security interest in 2001. Mr. Wallace, in *de bene esse* deposition testimony, opined that, when the instant litigation was commenced against it by the Caudles, FBA could have foreclosed on the property in order to protect its interest. The fact that its note may have been current was irrelevant. Other triggering events were provided by the Deed of Trust. That FBA *could* have foreclosed at any time after the federal litigation was initiated in 2001 has not been disputed by FBA. Mr. Wallace further testified that any attorney's fees requested by FBA which were extraneous to protecting its security interest were not necessary or appropriate.

At the end of the hearing, the Court ruled that FBA could only recover attorney's fees incurred in the federal litigation, the federal appeal, and the foreclosure action, subject to reasonableness standards, and excluding expert's fees. The Court also ruled that the Caudles could not be held liable for any deficiency should the amount of attorney's fees held to be properly recoverable exceed the amount of funds escrowed after the foreclosure on the property.

A subsequent hearing was held on May 12, 2005, for further argument on the issue of attorney's fees, and the Court took the matter under advisement.

*Analysis*

The issue in this case is whether FBA's request for $152,836.70[1] to defend a $41,000 to $43,000 property interest is reasonable where FBA's security interest was never really in jeopardy and FBA could have foreclosed at any time rather than having expended enormous sums defending the various suits.

Although FBA's request for attorney's fees may be reasonable *per se*, the request may not be reasonable as to the result obtained because the fees greatly exceed any amounts at risk as a result of the various claims.

Pursuant to *Chawla v. Burger Busters, Inc.*, 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998), in determining whether a party has established a *prima facie* case of reasonableness of attorney's fees, "a fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate."

The Court has previously ruled that the attorney's fees incurred by FBA are reasonable *per se*. Bernard Goodman, Esquire, FBA's expert witness, offered testimony as to all of the *Chawla* factors. The Court finds Mr. Goodman's testimony persuasive.

Notwithstanding, the Court remains troubled by the fact that FBA could have foreclosed on its obligation *at the outset* of this litigation and avoided the significant costs which it now seeks to pass on to the Caudles. Additionally, as FBA has made clear from its closing brief, one reason it chose not to foreclose is because it believed that it would recover all of its legal fees ultimately by virtue of its deed of trust language. That being so, it was not troubled perhaps by the ever escalating bills being incurred for what was in many respects a relatively minor matter. That fact, standing alone, gives the Court great pause and suggests that the bill should be pared substantially. When added to the fact that an expenditure of nearly a quarter million dollars in legal fees in order to protect a $43,000 note, which could have been easily and fully protected by a foreclosure, further compels the Court to substantially reduce the fees which may be recovered.

---

[1] FBA's total fees exceed $190,000. The balance of funds in escrow after satisfaction of FBA's deed of trust as a result of the December 2004 foreclosure is $143,500.

In short, FBA has woefully, and perhaps purposefully, failed to mitigate its damages. Simply put, and recognizing the benefit of hindsight, FBA did not have to respond to the degree and extent that it did in the various lawsuits, with the exception of the federal litigation and the suit to enjoin the foreclosure, in which it was named as a party.

On the other hand, and perhaps ironically because the Caudles ended up as the owners of the disputed property as a result of their efforts to do so, it is the Caudles who are the architects of their own misfortune in at least two glaring respects. First, they brought endless and protracted litigation which has repeatedly been found by various courts – and one court of appeals – to be totally without merit. Second, they took back this property with full notice of FBA's lien – not just its claim – as well as its considerable extent. On many occasions, they could have chosen to walk away from this Pandora's Box; yet, they persisted in pursuing this property. They got it at last, at least for the brief period between the issuance of this Court's initial Opinion Letter of August 12, 2004, and the foreclosure of December 2005, but it came with heavy baggage.

So, in the final analysis, this matter ends in equipoise. FBA has spent far more than it had to and it will not fully recover all of its fees, nor should it. The Caudles' victory in recovering their property is truly Pyrrhic; the property came with no value.

The Court adopts its two initial rulings, first from its Opinion Letter of August 12, 2004, and second from its ruling from the bench of May 5, 2005. The property passed to the Caudles subject to the lien of FBA for its costs and attorney's fees. Those fees and costs are limited to the sums expended in the defense of the federal litigation and the suit to enjoin the foreclosure, and its interest, all of which total $152,836.70. It is obvious from the evidence that those costs alone fully deplete the escrowed sum.

The Caudles are not personally responsible for any fees or costs associated with any of the prior litigation or this case. Their liability was not personal; they simply took the property subject to the FBA lien. The balance of FBA's fees not covered by the escrowed funds must be borne by FBA.

*Order*

This matter came before the Court pursuant to Respondent's Request for Attorney's Fees. For the reasons stated in this Court's opinion letter dated August 18, 2005, which is attached hereto and made a part hereof, Respondent is awarded $152,836.70 in attorney's fees to be paid, to the extent possible, out of the funds in escrow.